595 A.2d 1264

**C.J. BETTERS CORPORATION, Appellant,**

v.

**MID SOUTH AVIATION SERVICES, INC., d/b/a
Lakeland Air Center and R.E. Shackelford,
Appellees.   (Two Cases)**

Superior Court of Pennsylvania.

Argued Jan. 9, 1991.

Filed Aug. 20, 1991.

512

Joseph T. Moran, Pittsburgh, for appellant.

Mark F. Haak, Pittsburgh, for Mid South, appellee (at 818) and for Shackelford, appellee (at 1679).

Before TAMILIA, POPOVICH and JOHNSON, JJ.

POPOVICH, Judge:

These consolidated appeals are from the orders of the Court of Common Pleas of Beaver County which dismissed the assumpsit complaint against appellees, Mid–South Aviation Services and R.E. Shackelford, for want of *in personam* jurisdiction. We reverse and remand for trial.

The record reveals that appellant, C.J. Betters Corporation, is a Pennsylvania Corporation with its principal place of business in Aliquippa, Beaver County, Pennsylvania. Mid–South is a Florida corporation with its principal place of business in Lakeland, Florida. Mid–South is in the business of selling aviation fuel, performing maintenance on aircraft and brokering aircraft. R.E. Shackelford is a

resident of North Carolina [1] and original owner of the 1972 Cessna Citation airplane in question.

In 1988, Betters initially contacted Mid–South concerning a turbine driven propeller aircraft in response to one of Mid–South's advertisements. Mid–South places advertisements similar to newspaper "want-ads", in three separate national and international aviation trade journals to facilitate its brokerage business. After discussions with Mid–South, Betters determined a jet, rather than a propeller driven plane, would better suit its needs. Mid–South then located the Cessna Citation owned by R.E. Shackelford and informed Betters. The Cessna Citation was then flown to Mid–South's headquarters in Lakeland, Florida.

Representatives from Betters then travelled to Mid–South's headquarters to inspect the aircraft. The parties discussed various repairs and alterations which were to be performed prior to Betters' purchase of the aircraft. All of the "face-to-face" negotiations took place in Florida, and additional negotiations took place via letter and telephone correspondence between the parties' Florida and Pennsylvania headquarters.

On or about January 24, 1989, Mid–South's Chairman of the Board, Thomas S. Petcoff, executed the subject contract for the sale of the plane at Mid–South's Florida location. The contract was then sent to Aliquippa, Pennsylvania where it was executed by C.J. Betters, President of C.J. Betters Corporation. No Mid–South representatives travelled to Pennsylvania prior to delivery of the aircraft.

The sales contract provided Betters would pay Mid–South $440,000.00, for the aircraft, which included $55,000.00, for repairs and alterations to be made prior to delivery. The agreement specifically provided that Mid–South was to deliver the aircraft to the Beaver County, Pennsylvania, Airport, where final inspection was to be performed by Betters prior to acceptance. Over the next several months after

1. In his affidavit in support of his preliminary objections, R.E. Shackelford states his residence is in Bradenton, Florida. This discrepancy is of no consequence in the present appeal.

execution of the sales agreement, Mid–South and Betters were in close contact via telephone and written communications, regarding completion of the repairs and alterations required by the contract. On or about April 5, 1989, Betters accepted delivery of the Cessna Citation at the Beaver County Airport. Simultaneously, Betters directed the escrow agent to release the balance of the funds due to R.E. Shackelford.

Subsequently, on April 13, 1989, the aircraft's right engine malfunctioned during flight necessitating an emergency landing in Lancaster, Pennsylvania. Mid–South was immediately notified of the problem. However, the parties were unable to negotiate an amicable settlement, and Betters filed suit against Mid–South and R.E. Shackelford in the Court of Common Pleas of Beaver County seeking damages for the cost of repairs and loss of use in the total amount of $181,740.50.

Mid–South and Shackelford filed preliminary objections alleging lack of *in personam* jurisdiction in Pennsylvania. The lower court relying on *Dommel's Hotel, Inc. v. East–West Helicopter, Inc.*, 580 F.Supp. 15 (E.D.Pa.1984), agreed and dismissed the cases against Mid–South and Shackelford for want of jurisdiction. This appeal by Betters followed.

"[W]hen preliminary objections, if sustained, would result in the dismissal of an action, such objections should be sustained only in cases which are clear and free from doubt." *Barber v. Pittsburgh Corning Corp.*, 317 Pa.Super. 285, 302–03, 464 A.2d 323, 332 (1983), *cert. denied* 467 U.S. 1205, 104 S.Ct. 2387, 81 L.Ed.2d 346 (1984), *citing Botwinck v. Credit Exchange, Inc.*, 419 Pa. 65, 213 A.2d 349 (1965). "Moreover, when deciding a motion to dismiss for lack of personal jurisdiction the court must consider the evidence in the light most favorable to the non-moving party." *Barber v. Pittsburgh Corning Corp., supra.* ...

A court may exercise *in personam* jurisdiction over a nonresident if (1) jurisdiction is conferred by the state long-arm statute and (2) the exercise of jurisdiction under

the statute meets constitutional standards of due process. *Eastern Continuous Forms v. Island Business Forms*, 355 Pa.Super. 352, 513 A.2d 466 (1986). Under Pennsylvania's long-arm statute, the Pennsylvania court may exercise jurisdiction over nonresident defendants "to the fullest extent allowed under the Constitution of the United States" and jurisdiction may be based "on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa.C.S.A. § 5322(b). *See Skinner v. Flymo*, 351 Pa.Super. 234, 240, 505 A.2d 616, 619 (1986).

"The Due Process Clause of the Fourteenth Amendment to the United States Constitution permits personal jurisdiction over a defendant in any State with which the defendant has 'certain minimum contacts ... such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' *Milliken v. Meyer*, 311 U.S. 457, 463, [61 S.Ct. 339, 342, 85 L.Ed. 278 (1940) ].' " *Eastern Continuous Business Forms, supra*, 355 Pa.Super. at 354–55, 513 A.2d at 467, *quoting Calder v. Jones*, 465 U.S. 783, 787, 104 S.Ct. 1482, 1486, 79 L.Ed.2d 804, 810 (1984). In minimum contacts analysis, "talismanic jurisdictional formulas" are rejected and the facts of a each case are weighed in determining whether personal jurisdiction will comport with fair play and substantial justice. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 485–86, 105 S.Ct. 2174, 2189, 85 L.Ed.2d 528, 549 (1985), *quoting Kulko v. California Superior Court*, 436 U.S. 84, 92, 98 S.Ct. 1690, 1696–97, 56 L.Ed.2d 132, 141 (1978), *reh'g denied* 438 U.S. 908, 98 S.Ct. 3127, 57 L.Ed.2d 1150 (1978)....

While an individual's contract with an out-of-state party cannot alone establish sufficient contacts with the forum state, negotiations prior to the contract, its contemplated future consequences, the terms of the contract and the parties' actual course of dealing must be evaluated in determining whether the defendant "purposely avail[ed] itself of the privilege of conducting activities within the

forum State." *Burger King Corp. v. Rudzewicz, supra,* 471 U.S. at 474–75, 105 S.Ct. at 2183, 85 L.Ed.2d at 542 & 545, *quoting Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). . . .[2]

Once it has been determined that the defendant has purposely established minimum contacts with the forum state, those contacts may be considered in light of other factors to determine whether the exercise of personal jurisdiction will comport with fair play and substantial justice. *Burger King v. Rudzewicz, supra,* 471 U.S. at 476–77, 105 S.Ct. at 2184, 85 L.Ed.2d at 612. Those factors include the burden on the defendant, the forum state's interest in adjudicating the dispute; the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the "several States in furthering fundamental substantive social policies." *Id.*

*Kenneth H. Oaks, Ltd. v. Josephson,* 390 Pa.Super. 103, 104–08, 568 A.2d 215, 216–217 (1989). *See also United Farm Bur. Mut. Ins. v. U.S. Fid. & Guar.,* 501 Pa. 646, 654–59, 462 A.2d 1300, 1304–1306 (1983); *Skinner v. Flymo, Inc.,* 505 A.2d at 619–621.[3]

2. The concept that a corporation has "purposefully avail[ed] itself of the privilege of conducting activities within the forum state" is inextricably intertwined with that of "forseeability" so that a corporation has clear notice that it is subject to suit in that forum and can structure its conduct accordingly. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490, 501 (1980). In other words, the defendant's conduct and connection to the forum must be such that "he should reasonably anticipate being haled into court there." 444 U.S. at 297, 100 S.Ct. at 567, 62 L.Ed.2d at 501.

3. In Pennsylvania, the foregoing analysis has often been performed by applying the three part test first announced in *Proctor & Schwartz, Inc. v. Cleveland Lumber Co.,* 228 Pa.Super. 12, 19, 323 A.2d 11, 15 (1974), as follows:

First, the defendant must have purposely availed itself of the privilege of acting within the forum state thus invoking the benefits and protections of its laws. *Hanson v. Denckla, supra.* Secondly, the cause of action must arise from defendant's activities within the forum state. *See Southern Mach. Co. v. Mohasco Indus., Inc.,* 401 F.2d 374 (6th Cir.1968); *Electric Regulator Corp. v. Sterling Extruder*

Keeping the aforementioned principles in mind, we now address the question of whether, viewing the evidence in a light most favorable to Betters, the non-moving party, the lower court erred in dismissing Mid–South and Shackelford for lack of personal jurisdiction in Pennsylvania. We find that the lower court erred in dismissing the actions against Mid–South and R.E. Shackelford. Initially, we note that it is undisputed that jurisdiction is conferred by the Pennsylvania long-arm statute, 42 Pa.C.S.A. § 5322(a)(1) and (3). Consequently, we need only address the question of whether the exercise of jurisdiction comports with the standards of due process. *Kenneth H. Oaks, Ltd.*, 390 Pa.Superior Ct. 568 A.2d at 216.

▇▇▇ Undoubtedly, an out-of-state party's contract with a forum resident *alone* is insufficient to establish minimum contacts necessary to satisfy the mandates of due process. *Burger King v. Rudzewicz*, 471 U.S. at 478, 105 S.Ct. at 2185.[4] However, presently, the contract for the sale of the

*Corp.*, 280 F.Supp. 550 (D.Conn.1968). Lastly, the acts of the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over it reasonable. *International Shoe v. Washington, supra* [326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) ]; *see Southern Mach. Co. v. Mahasco Indus., Inc., supra* [401 F.2d 374 (6th Cir.1968) ]; *see also In–Flight Devices Corp. v. Van Dusen Air, Inc.,* 466 F.2d 220 (6th Cir.1972); *Kourkene v. American BBR, Inc.,* 313 F.2d 769 (9th Cir.1963).

*See also Crompton v. Park Ward Motors, Inc.,* 299 Pa.Super. 40, 44–45, 445 A.2d 137, 139 (1982); *Koenig v. International Bro. of Boilermakers,* 284 Pa.Super. 558, 426 A.2d 635 (1980).

However, this three part test was criticized by the Chief Justice Roberts of the Pennsylvania Supreme Court in *Kingsley & Keith (Canada) Ltd. v. Mercer International Corp.,* 500 Pa. 371, 374 n. 1, 456 A.2d 1333, 1335 n. 1 (1983) (affirmance by an equally divided court). Subsequently, in *United Farm, supra,* six justices, although evenly divided as to the result, adopted a more flexible, minimum contact analysis of jurisdictional due process. By moving towards a more flexible approach, we defer to the admonition of the United States Supreme Court that *in personam* jurisdiction may not turn on the application of "mechanical" test. See *Burger King v. Rudzewicz,* 471 U.S. at 478, 105 S.Ct. at 2185.

4. The question of whether and to what extent a contract can constitute a "contact" for the purposes of the due process analysis is a matter of great debate among modern jurist. In *Lakeside Bridge & Steel Co. v. Mountain State Construction Co., Inc.,* 445 U.S. 907, 910–911, 100 S.Ct. 1087, 1089, 63 L.Ed.2d 325, 326 (1980), United States Supreme Court

airplane itself was not the only "contact" with Pennsylvania. Moreover, even a single act can support jurisdiction, so long as it creates a "substantial connection" with the forum, provided the nature, quality and circumstances of the act's commission create more than a mere attenuated affiliation with the forum. *Burger King v. Rudzewicz,* 471 U.S. at 475 n. 18, 105 S.Ct. at 2184 n. 18, citing *McGee v. International Life Ins Co.,* 355 U.S. 220 at 223, 78 S.Ct. 199 at 201, 2 L.Ed.2d 223 (1957), *International Shoe Co. v. State of Washington,* 326 U.S. 310 at 318, 66 S.Ct. 154 at 159, 90 L.Ed. 95 (1945), and *World–Wide Volkswagen,* 444 U.S. at 299, 100 S.Ct. at 568.

■ Instantly, Mid–South admits several "contacts" with Pennsylvania: 1) Mid–South entered into a contractual relationship with a resident corporation of Pennsylvania; 2) Betters finally executed the subject contract at its headquarters in Pennsylvania; 3) Pursuant to the contract, Mid–South delivered the aircraft to Betters for final inspection and acceptance at the Beaver County Airport in Pennsylvania.

To those contacts with Pennsylvania, we note several additional contacts with Pennsylvania: 1) Mid–South advertises its aircraft brokerage business in aviation trade journals which are distributed nation-wide and which reached Betters in Pennsylvania; 2) During the course of contract negotiation and after entering into the contract, but prior to delivery, Mid–South communicated extensively via letter and telephone with representatives of Betters at their Pennsylvania headquarters; and 3) The aircraft malfunction from which this contract action arises occurred in Pennsylvania.

Based on the parties' extensive negotiations and communications, Mid–South knew that the aircraft would be used by the Pennsylvania purchaser in Pennsylvania. Signifi-

Justice White, joined by Justice Powell, in his dissent from the denial of certiorari, noted "the question of personal jurisdiction over a nonresident corporate defendant based on contractual dealings with a resident plaintiff has deeply divided the federal and state courts."

cantly, the contract provided that Mid–South deliver the aircraft to Pennsylvania for final inspection and acceptance. Under the present facts, Mid–South's single "act" of selling the Cessna Citation to Betters does create a substantial connection with this forum. Mid–South "purposely availed" itself of the privilege of conducting business in Pennsylvania. See *Kingsley & Keith*, 500 Pa. at 373, 456 A.2d at 1334–1335 (Canadian carrier purposely availed itself of privilege of conducting business in Pennsylvania where it entered into contract to transport goods from Pennsylvania to Canada and, in fact, entered the Commonwealth to perform). This cause of action for, *inter alia*, breach of warranty certainly arose from Mid–South's forum related activity, i.e., the sale of the aircraft to a Pennsylvania resident, requiring delivery of the plane to Pennsylvania. Further, the magnitude of this transaction, a sale of an aircraft for $440,000.00 to a Pennsylvania resident corporation, also supports this holding that Mid–South, if sued, should have reasonably anticipated being sued in Pennsylvania.

This exercise of jurisdiction comports with traditional notions of fair play and substantial justice. The burden of litigating in a foreign jurisdiction placed upon Mid–South is not inordinate. Since the aircraft malfunction occurred in Pennsylvania, the aircraft was repaired in Pennsylvania and the aircraft continues to be located in Pennsylvania, many of the key witnesses are from Pennsylvania. In addition, Pennsylvania has an legitimate public interest in policing its air traffic, and thus, has a strong interest in resolving this dispute. *Cf., Kingsley & Keith*, 500 Pa. at 373, 456 A.2d at 1334–1335 ("The state's interest in assuring that a contract for the safe transportation of Pennsylvania goods is properly performed must be evident. Not only does Pennsylvania have an interest in highway safety ...").

The lower court mistakenly relied upon *Dommel's Hotel, Inc. v. East West Helicopter, Inc.*, 580 F.Supp. 15 (E.D.Pa. 1984), in deciding to dismiss the complaints against Mid–South and R.E. Shackelford. In *Dommel's Hotel, supra*, a Pennsylvania purchaser: 1) contacted a Ohio seller regard-

ing purchase of a helicopter; 2) visited the Ohio seller's headquarters to inspect the helicopter; 3) negotiated the terms of purchase in Ohio; 4) executed the sales agreement in Ohio; and 5) picked up the helicopter in Ohio. Significantly, the Ohio seller never conducted or solicited business in Pennsylvania. The opinion in *Dommel's Hotel, supra,* noted that the Ohio seller's only contact with the forum was the knowledge that the helicopter was being purchased for use primarily in Pennsylvania and held that contact *alone* was insufficient to support *in personam* jurisdiction. 580 F.Supp. at 18–19. Basically, the seller's contacts with the forum required for the exercise of jurisdiction can not be established by the unilateral activities of the purchaser. *Dommel's Hotel,* 580 F.Supp. at 19, citing *Hanson v. Denckla,* 357 U.S. at 253, 78 S.Ct. at 1240. Instantly, however, Mid–South's contacts with the forum are far more extensive that those of the defendant in *Dommel's Hotel, supra.* Most significant is the fact that the contract in question provided that Mid–South must enter Pennsylvania to deliver the aircraft. Thus, it is not the unilateral actions of Betters alone which confer jurisdiction.

We find the analogous case of *Furnival Machinery Co. v. Joseph T. Barta Associates, Inc.,* 470 F.Supp. 735 (E.D.Pa.1979), instructive. Therein, a New York corporation participated in a three party transaction whereby it delivered an airplane to an Illinois corporation knowing that the latter would transfer the plane to a Pennsylvania corporation once it had completed "cosmetic" refurbishing. The New York corporation also knew that the full purchase price had been paid to it by the Pennsylvania corporation. On those facts, the District Court held that personal jurisdiction was proper under Pennsylvania's then existing long-arm statute. *Furnival Machinery,* 470 F.Supp. at 739. Similarly, Mid–South knew that the purchaser was a Pennsylvania resident, delivered the plane to Pennsylvania and accepted the full purchase price from Betters, a Pennsylvania corporation.

■ We also find that the exercise of *in personam* jurisdiction by Pennsylvania courts over R.E. Shackelford is proper. As found by the court below, Mid–South was acting as Shackelford's agent. See Opinion and Order, Steege, J., September 25, 1990, p. 1–2. Shackelford admits he paid Mid–South $20,000.00 for its role in the sale of the airplane. Under 42 Pa.C.S.A. § 5322, the long arm statute provides that jurisdiction over a person may be based upon the actions of his agent. In this case, Mid–South, acting as Shackelford's agent, established the requisite contacts with the forum state necessary to subject Shackelford to *in personam* jurisdiction in Pennsylvania.

Moreover, Shackelford's own contacts with the forum bolster those created by its agent. Shackelford knew the aircraft was to be sold to a Pennsylvania corporation and willingly accepted a check for the purchase price of the plane from Betters. Thus, the case of *Furnival Machinery, supra,* again provides guidance. Shackelford willingly delivered the airplane to Mid–South knowing full well that after certain cosmetic and mechanical changes, the plane would be delivered to Betters, a Pennsylvania corporation.[5] This is not a case where a defendant having sold an article to one customer may fairly claim surprise when that same article later turns up in a third state. *See Johnson v. Helicopter & Airplane Servs. Corp.,* 389 F.Supp. 509, 530 (D.Md.1974). By taking part in this transaction, Shackelford purposefully availed himself of the privilege of conducting business activities in Pennsylvania. *Cf., Furnival Machinery,* supra.

In sum, we find that the exercise of *in personam* jurisdiction over Mid–South and consequently, R.E. Shackelford, to be proper in Pennsylvania. Accordingly, we reverse the decision of the court below and reinstate the suits against Mid–South and R.E. Shackelford.

5. In fact, the airplane bill of sale listed Shackelford and seller and Betters as buyer. Although not part of the record, counsel for Shackelford produced a copy of the bill of sale at argument on the preliminary objections. See Opinion and order of Steege, J., September 25, 1990, p. 2.

Order reversed and case remanded for further proceedings. Jurisdiction relinquished.