J-A23024-22

2022 PA Super 206

| | | |
|---|---|---|
| DIGNA FUENTES MERINO | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| REPAK, B.V. AND ROBERT REISER | : | |
| AND CO., INC. | : | |
| | : | |
| | : | No. 135 MDA 2022 |
| | : | |
| APPEAL OF: REPAK, B.V. | : | |

Appeal from the Order Entered December 10, 2021
In the Court of Common Pleas of Lebanon County Civil Division at No(s):
2020-00368

BEFORE: BOWES, J., McCAFFERY, J., and STEVENS, P.J.E.*

OPINION BY McCAFFERY, J.: **FILED: DECEMBER 6, 2022**

Repak, B.V. (Repak), a limited liability company operating out of the Netherlands, appeals from the order entered December 10, 2021,[1] in the Lebanon County Court of Common Pleas, as amended on December 27, 2021, overruling its preliminary objections to personal jurisdiction in this products liability action initiated by Digna Fuentes Merino (Appellee).[2] On appeal,

_____

* Former Justice specially assigned to the Superior Court.

[1] This order was not docketed until December 13, 2021. However, because the parties and trial court refer to this as the December 10th order, we will do so as well.

[2] As will be discussed in more detail **infra**, on December 27, 2021, the trial court granted Repak's motion to amend its December 10th order to reflect the court's determination that "[a] substantial issue of venue or jurisdiction has been presented in the case at bar" thereby rendering the order appealable pursuant to Pa.R.A.P. 311(b)(2). **See** Order, 12/27/21. We note that this
*(Footnote Continued Next Page)*

Repak asserts the trial court erred and abused its discretion when it: (1) exercised personal jurisdiction over Repak based upon either Repak's independent contacts with the Commonwealth of Pennsylvania, or its relationship with co-defendant Robert Reiser and Co., Inc. (Reiser), and (2) improperly determined Appellee would be without recourse if personal jurisdiction were not established. After careful review, we affirm.

## A. **Facts & Procedural History**

The relevant facts and procedural history underlying this appeal are aptly summarized by the trial court as follows:

> On September 18, 2018, [Appellee] was employed at Godshall's Quality Meats, a Lebanon [County] based business focusing on producing, packaging, and selling meat products. On this day [Appellee] was using a meat packaging machine that [Appellee] alleges was manufactured by Repak . . . and sold and distributed within the Commonwealth by their distributor [Reiser]. While using the meat packaging machine [Appellee] suffered a substantial injury to her left index finger.
>
> [Appellee] filed a complaint against Repak and Reiser in [the trial court] on February 14, 2020, alleging negligence, strict liability, and breach of warranty. . . . Reiser filed an Answer on August 12, 2020. On March 24, 2021[,] Repak filed preliminary objections.[3] On April 13, 2021, [Appellee] filed responsive preliminary objections and a brief in opposition to Repak's

---

order was not docketed until the next day, December 28th. Again, however, because the parties and trial court refer to this as the December 27th order, we will do so as well.

[3] Specifically, Repak asserted that Appellee "cannot establish either general or specific personal jurisdiction against [it] in the Commonwealth of Pennsylvania." **See** Repak's Preliminary Objections to Appellee's Complaint, 3/24/21, at ¶ 23.

preliminary objections. Oral argument was heard on July 2, 2021, in regards to the preliminary objections and supplemental briefs were subsequently filed. . . .

Trial Ct. Op., 11/9/21, at 2-3 (some capitalization omitted).

On November 9, 2021, the trial court entered an order, with accompanying opinion, overruling Repak's preliminary objections, and directing Repak to file an answer within 60 days. Order, 11/9/21. On December 10, 2021, however, the trial court entered a second order, explaining that its November 9th order was "mistakenly mailed to the incorrect attorney of record for [Repak.]" Order, 12/10/21. Thus, the court "reissue[d]" its order and opinion on that day to preserve Repak's appeal rights. *Id.*

Ten days later, Repak filed a motion requesting the trial court either amend its December 10th order to make it appealable by stating a "substantial issue of venue or jurisdiction has been presented[,]" or reconsider its ruling. *See* Repak's Motion to Amend the Order Dated December 10, 2021 or in the Alternative Reconsider & Vacate the Order Dated December 10, 2021 Denying the Preliminary Objections of Repak, 12/23/21, at 3-4 (unpaginated) (quotation marks omitted). On December 27, 2021, the trial court entered an order granting Repak's motion to amend and directing that its December 10th order "shall be amended to include the holding that [a] substantial issue of venue or jurisdiction has been presented in the case at bar." Order, 12/27/21 (quotation marks omitted). Repak filed a notice of appeal on January 13, 2022, and complied with the trial court's directive to file a

Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.[4]  The court filed a responsive order on February 15, 2022, in which it, *inter alia*, determined that its prior opinion issued on November 9, 2021, sufficiently responded to Repak's claims on appeal.  ***See*** Order, 2/15/22, at 1.

## B.  Issues on Appeal

Repak presents the following issues for our review:

A. The trial court committed errors of law and abused its discretion in concluding that [Repak] individually (i.e. independent of the actions of Co-Defendant Reiser) has sufficient minimum contacts with the Commonwealth of Pennsylvania that justify the Court's exercise of specific jurisdiction, because the Court admits that it cannot directly attribute any forum-related contacts to [Repak] that satisfy the strict limitations on jurisdiction required of Pennsylvania's Long-Arm Statute and the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

A.(1) The trial court committed errors of law and abused its discretion in its interpretation and application of the legal standard of "fair play and substantial justice".

B. The trial court committed errors of law and abused its discretion by concluding that an agency relationship exists between [Repak] and Reiser to justify the exercise of specific personal jurisdiction over [Repak].

C. The trial court committed errors of law and abused its discretion in relying on dicta in ***Daimler AG v. Bauman***, 571 U.S. 117, 137 (2014) to support its exercise of specific personal jurisdiction over [Repak].

---

[4] Repak's six-page Rule 1925(b) statement cannot be characterized as **concise**.  Rather, it lists ten, redundant claims, which are fairly represented by the issues presented in its brief.  To the extent Repak raised any claims in its Rule 1925(b) statement that are not presented on appeal, we conclude those claims are abandoned.

D. The trial court committed errors of law and abused its discretion by concluding that a Parent/Subsidiary relationship exists between [Repak] and Reiser to satisfy the strict limitations on jurisdiction set forth in Pennsylvania's Long-Arm Statute and the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

E. The trial court committed errors of law and abused its discretion by not providing legal or factual support for its conclusion that if the Court does not exercise specific jurisdiction over Repak, [Appellee] will be without recourse in the Pennsylvania courts and will suffer unconscionable inconvenience and expense.

Repak's Brief at 7-8.

## C. **Timeliness of Appeal**

Before we consider Repak's substantive claims on appeal, we must first address Appellee's assertion that this appeal should be quashed as untimely filed. *See* Appellee's Brief at 1-4. Appellee contends that this appeal is from "the trial court's non-appealable interlocutory Order and Opinion of November 9, 2021[,] overruling [Repak's] meritless preliminary objections challenging the court's exercise of personal jurisdiction." *Id.* at 1. She argues that the "**only** permissible" way Repak could have appealed from the order was to "seek permission for appeal under Pa.R.A.P. 312,[5] which it failed to do." *Id.* at 2. Moreover, Appellee insists that the court's December 27, 2021, order which purported to amend the December 10th order to state that "a substantial issue of . . . jurisdiction has been presented[,]" did not provide

_____

[5] Rule 312 provides that "[a]n appeal from an interlocutory order may be taken by permission pursuant to Chapter 13." Pa.R.A.P. 312. *See also* Pa.R.A.P. 1301-1323.

- 5 -

Repak with the right to appeal because the court never "amended or re-issued" its November 9th or December 10th orders "to incorporate the language." *Id.* at 3. In any event, assuming the court properly amended the December 10th order, Appellee contends that Repak's appeal is untimely because it was not filed within 30 days of the December 10th order. *Id.*

We conclude Repak's appeal is proper, and was timely filed. Although the trial court's December 10th order was interlocutory, the court subsequently granted Repak's motion to amend the order to include the requisite language of Rule 311(b)(2) that "a substantial issue of venue or jurisdiction is presented." *See* Pa.R.A.P. 311(b)(2). Thus, it was not until the entry of the trial court's December 27th order, that its December 10th order became appealable as of right pursuant to Rule 311(b)(2). Accordingly, the 30-day appeal period began to run on December 28th — when the December 27th order was docketed — and Repak's notice of appeal filed on January 13, 2022, was timely. *See Martin v. Gerner*, 481 A.2d 903, 905 (Pa. Super. 1984) (holding appeal period began to run from order entered on December 18th, which amended prior order entered on November 6th, to include Rule 311(b)(2) language, and rendering interlocutory order appealable); *Estate of Haiko v. McGinley*, 799 A.2d 155, 159 (Pa. Super. 2002) ("an aggrieved party may appeal [an] order within thirty days after the entry of [an] order granting reconsideration and an appeal from such an order will be deemed timely"). Moreover, we note, too, that the trial court conceded in its Pa.R.A.P. 1925(a) response that it was "unaware of [Rule 311(b)(2)] or [it] would have

included [the language] in the original" order. Order, 2/15/22, at 2. Thus, we proceed to address Repak's claims on appeal.

### D. **Standard of Review & Relevant Law**

Our review of an order overruling preliminary objections is well-established: We must "determine whether the trial court committed an error of law." ***Mar-Eco, Inc. v. T & R & Sons Towing & Recovery, Inc.***, 837 A.2d 512, 514 (Pa. Super. 2003). An appellate court applies the same standard as the trial court in determining "the appropriateness of a ruling on preliminary objections." ***Id.***

> [W]hen deciding a motion to dismiss for lack of personal jurisdiction the [trial] court must consider the evidence in the light most favorable to the non-moving party. . . . Once the moving party supports its objections to personal jurisdiction, the burden of proving personal jurisdiction is upon the party asserting it. Courts must resolve the question of personal jurisdiction based on the circumstances of each particular case.

***Mendel v. Williams***, 53 A.3d 810, 816–17 (Pa. Super. 2012) (citation omitted).

Whether a trial court in Pennsylvania may exercise personal jurisdiction over a foreign defendant is guided by both our long-arm statute, codified at 42 Pa.C.S. § 5322, and the Due Process Clause of the United States Constitution. ***See Bean Sprouts LLC v. LifeCycle Construction Services LLC***, 270 A.3d 1237, 1240 (Pa. Super. 2022). Pursuant to Section 5322(a), a trial court "may exercise personal jurisdiction over a person . . . who acts directly **or by an agent**, as to a cause of action . . . arising from such person . . . [t]ransacting any business in this Commonwealth." 42 Pa.C.S. §

5322(a)(1) (emphasis added). The statute further provides that "transacting business" includes:

> (ii) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object with the intention of initiating a series of such acts.
>
> (iii) The shipping of merchandise directly or indirectly into or through this Commonwealth.

42 Pa.C.S. § 5322(a)(1)(ii), (iii). Subsection (b) of the statute is a catch-all provision which provides that "jurisdiction may be exercised over persons who do not fall within the express provisions of section 5322(a) to the fullest extent permitted by the Due Process Clause of the United States Constitution." *Mendel*, 53 A.3d at 821. *See* 42 Pa.C.S. § 5322(b).

In considering the jurisdictional requirements of the Due Process Clause, this Court has explained:

> The extent to which the Due Process Clause proscribes jurisdiction depends on the nature and quality of the defendant's contacts with the forum state. Where a defendant "has established no meaningful contacts, ties or relations" with the forum, the Due Process Clause prohibits the exercise of personal jurisdiction. However, where a defendant has "purposefully directed" his activities at the residents of the forum, he is presumed to have "fair warning" that it may be called to suit there.

*Fulano v. Fanjul Corp.*, 236 A.3d 1, 12–13 (Pa. Super. 2020) (citations omitted).

A corporate defendant's activities within the Commonwealth may "give rise to either specific or general jurisdiction." *Fulano*, 236 A.3d at 13 (citation & quotation marks omitted). General jurisdiction is normally limited to where

the corporation is "headquartered or incorporated[,]" save for the "exceptional case" when the corporation's "operations were so substantial and of such a nature [in a particular forum] as to render the corporation at home." *Hammons v. Ethicon, Inc.*, 240 A.3d 537, 555 (Pa. 2020), *citing Daimler*, 517 U.S. at 139 n.19.

Specific jurisdiction is "a more limited form of submission to a State's authority[.]" *Hammons*, 240 A.3d at 556. It arises when a foreign defendant "purposefully avails itself of the privilege of conducting activities within the forum state." *Id.* (citation omitted)

> [A]t its most simplistic, the question for specific personal jurisdiction [is] whether the defendant has sufficient "minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co.* [*v. State of Washington, Officer of Unemployment Compensation & Placement*], 326 U.S. [310,] 316 [(1945)]. Requiring minimum contacts satisfies due process by ensuring that the defendant may "reasonably anticipate" where it may be "ha[u]led into court" based upon which forums it has "purposefully avail[ed] itself of the privilege of conducting activities." [T]his requirement ensures that a defendant will not be subject to jurisdiction "solely as a result of random, fortuitous, or attenuated contacts."

*Id.* (some citations omitted).

Courts have relied on the following three-part test to determine whether a defendant may be subjected to specific personal jurisdiction in a particular case:

> (1) Did the plaintiff's cause of action arise out of or relate to the out-of-state defendant's forum-related contacts?
>
> (2) Did the defendant purposely direct its activities, particularly as they relate to the plaintiff's cause of action, toward the forum

state or did the defendant purposely avail itself of the privilege of conducting activities therein?

(3) [W]ould the exercise of personal jurisdiction over the nonresident defendant in the forum state satisfy the requirement that it be reasonable and fair?

**Hammons**, 240 A.3d at 556 (citation omitted). Moreover, we note that it is the defendant's burden to object to jurisdiction in the first instance. **Id.** at 561. However, once it does so, the plaintiff bears the burden of establishing personal jurisdiction over the defendant in the chosen forum. **Id.**

## E. Trial Court's Opinion

With this background in mind, we first consider the trial court's decision.[6] The court determined that it could exercise specific personal jurisdiction over Repak under both Pennsylvania's long-arm statute and the Due Process clause of the United States Constitution. The trial court opined:

Repak has either itself or through the actions of Reiser as its agent performed many of the actions which authorize the use of the state long-arm statute. Additionally, Repak reached out beyond its home in the Netherlands and purposefully availed itself of

---

[6] We note that, in response to Repak's preliminary objections, Appellee argued, *inter alia*, that the preliminary objections were untimely filed. **See** Appellee's Preliminary Objections & Response to Repak's Time-Barred Preliminary Objections, 4/26/21, at 1-4. The trial court, however, rejected that argument, finding that Appellee failed to demonstrate how the late filing "negatively affected" her. Trial Ct. Op. at 4. Appellee's only mention of this claim in her brief is in a footnote, in which she asserts she "maintains that . . . Repak's failure to file its Preliminary Objections . . . for over seven (7) months past the time period allowed for filing a responsive pleading without case constitutes [a] separate, adequate basis for their denial." Appellee's Brief at 10-11, n.3. We conclude this passing reference to the purported untimeliness of Repak's preliminary objections is insufficient to raise this argument as a separate claim on appeal; therefore, we will not address it further.

conducting activities within the Commonwealth that fulfill the principles of Due Process.

Trial Ct. Op. at 4-5 (some capitalization omitted).

First, with regard to the long-arm statute, the court conceded that Repak never **directly** conducted business in the Commonwealth, nor marketed its products here. Trial Ct. Op. at 6. Nevertheless, the trial court concluded that Reiser acted "as an agent for Repak in [its] dealings with businesses in the Commonwealth" and through their partnership "sells, distributes, and advertises its products to meat packing companies throughout the Commonwealth." *Id.* Thus, through its relationship with Reiser, Repak transacted business within the Commonwealth pursuant to Section 5322(a). Furthermore, the court determined that Repak's actions fall within the catch-all provision of Section 5322(b), "which provides jurisdiction over any party that meets the most minimum contact allowed under the Constitution of the United States." *Id.*

Next, the trial court considered whether Repak was subject to specific jurisdiction in Pennsylvania pursuant to the Due Process Clause.[7] The court explained that although Repak's manufacture of the machine responsible for Appellee's injury "is [its] only contact with the [Commonwealth] and is a thin thread," the court also considered "the actions of Reiser which [it] believe[d

_____

[7] The trial court determined that it could not assert general jurisdiction over Repak because it is neither "incorporated within the state [n]or has its [principal] place of business there." Trial Ct. Op. at 7. Appellee did not challenge this ruling.

- 11 -

could] be attributed to Repak as well." Trial Ct. Op. at 7. The court stated it sought to assert "specific jurisdiction over a corporation based solely on actions attributed to it by its co[-]defendant and agent." *Id.* at 8.

While the trial court acknowledged it found no case law with similar facts, it relied upon the United States Supreme Court's decision in *Daimler* for support. The trial court acknowledged that the *Daimler* Court held **general** jurisdiction could not be exercised over a foreign defendant based **solely** upon the actions of its agent. Trial Ct. Op. at 8. However, the trial court observed that "several times" in that decision, the Supreme Court "insinuate[d] that if the plaintiff had argued for **specific** jurisdiction rather than general jurisdiction the outcome may [have been] different." *Id.* (emphasis added), *citing Daimler*, 571 U.S. at 132-34.

The trial court then considered the traditional test first set out in *International Shoe* — that is, whether Repak had "certain minimum contacts with [the Commonwealth] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice[.]" Trial Ct. Op. at 8, *citing International Shoe*, 326 U.S. at 316 (quotation marks omitted). Specifically, the trial court analyzed whether Repak "participat[ed] within the [Commonwealth] to the point" that it purposefully availed itself of the "benefits and protections of the laws of" the Commonwealth. Trial Ct. Op. at 8-9 (citation omitted). In concluding that it did, the trial court opined:

> In the current case, [Repak] has supplied an affidavit from Hans Fehrmann a managing director for Repak. In [the] affidavit [Mr. Fehrmann] states that Repak is incorporated and located in

- 12 -

the Netherlands, and "is a separate corporate entity from its distributor defendant, [Reiser]." Mr. Fehrmann further states that Repak has no physical presence within the United States, has no employees with the country, and maintains no accounts, licenses, or registrations with the United States. [Appellee] and this court [do not] dispute this. However, as previously stated this [c]ourt believes that Repak and Reiser are so closely tethered together in their business dealings that Reiser is Repak's American agent, if not subsidiary.

[Appellee] included a distribution agreement between Repak and Reiser in her Brief [filed in opposition to Repak's preliminary objections]. In the agreement Reiser is appointed Repak's sole distributor within the United States. Any of Repak's products that enter the United States are ordered by Reiser before being sold to businesses across the country including multiple businesses in the Commonwealth. In the agreement Repak actually contracts away its ability to sell any products directly within the United States. Additionally, Repak agrees to list Reiser as a co-insured party on all product liability insurance maintained by Repak. Within the agreement Repak provides Reiser with the ability to have a representative appointed to Repak's Board of Directors. Repak also agrees to provide training in sales and services, promotional material including brochures, literature, and CDs, and authorizes Reiser to use Repak's trademarks. Finally, Repak rewards Reiser's salespeople, including Reiser's [Pennsylvania] representative who won the "Repak Reiser Salesman of the Year 2019" and was awarded with a trip to the Netherlands. [*See* Appellee's Brief in Opposition to Repak's Preliminary Objections to Appellee's Complaint, 4/13/21, at Exhibits E (Distribution Agreement, 7/1/04) [Distribution Agmt], Exhibit F (Repak Facebook Post, 1/8/20) [Repak Facebook Post].]

We look to see if Repak has such minimum contacts within the Commonwealth that bringing Repak before our court does not violate the "notions of fair play and substantial justice." In the present case Repak's machine was advertised, solicited, and sold within the Commonwealth by Reiser. Repak uses its contract with Reiser to try and remove itself entirely from the personal jurisdiction of the United States, despite having it products distributed and used in the United States. The court feels that this attempt to shield themselves from suit within the United States flies in the face of any notions of fair play, and supports the Court's use of personal jurisdiction over Repak.

Trial Ct. Op. at 9-10 (citations & some capitalization omitted).

Lastly, the trial court contemplated Appellee's recourse should it determine it could not exercise personal jurisdiction over Repak. Trial Ct. Op. at 10. The court noted that Appellee, "a Pennsylvania citizen with no contact with the Netherlands[, would] be required to spend large sums of money . . . bringing a case against Repak in the Netherlands." *Id.* Comparing the cost for Appellee to seek justice in a foreign jurisdiction for an injury she suffered at work in Pennsylvania, with the "minimal inconvenience" Repak would suffer if required to defend itself in Pennsylvania — particularly because Repak "has dealings with the United States and already sends representatives to and from this country for training and meetings with Reiser" — the trial court determined it was more reasonable for Repak to bear the inconvenience. *Id.* at 11. Thus, the court concluded it could exercise specific personal jurisdiction over Repak.

### F. Trial Court's Contradictory Findings & Misapplication of Law

In its first issue on appeal, Repak contends the trial court erred or abused its discretion when it made contradictory findings. *See* Repak's Brief at 22. It argues the trial court first conceded Repak did **not** have sufficient **independent** contacts with Pennsylvania to support the exercise of personal jurisdiction, but later "incorrectly conclude[d] that specific jurisdiction is warranted because of actions attributable to [Repak] **itself**." *Id.* at 23 (emphasis added). Repak insists that "[a] defendant's relationship with a third-party distributor, standing alone, is an 'insufficient basis for

- 14 -

jurisdiction.'"  Repak's Brief at 23-24, *citing* **Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.**, 137 S.Ct. 1773, 1783 (2017).  Further, it argues that, in the present case, although the trial court concluded it could assert jurisdiction over Repak based upon five provisions of the long-arm statute, the court failed to "provide factual or legal support" for those findings, nor did it determine whether the "alleged conduct was performed by [Repak] individually or was attributed to it by Reiser[.]"  Repak's Brief at 25-26.

In a related claim, Repak asserts the trial court misapplied the concepts of "purposeful availment" and "fair play and substantial justice."  Repak's Brief at 28-29.  It notes the trial court opined that Repak's attempt to use its contract with Reiser to shield itself from suit in the United States "flies in the face of any notions of fair play[.]"  *Id.* at 28 (citation omitted).  However, Repak argues:

> The analysis is not whether the **defendant['s] actions** comport with the legal notions of fair play and substantial justice, but rather whether the facts in the case support a finding that [Repak's] conduct within Pennsylvania is such that [Repak] can be deemed to have "purposefully availed" itself of the benefits and protections of the laws of Pennsylvania so that so [Repak] **should reasonably expect to be** [**hauled**] **into court** there.  This is the proper application of the legal notions of "fair play and substantial justice."

*Id.* at 29 (citation omitted & emphases added).

Upon our review, we conclude Repak mischaracterizes the trial court's findings.  First, we note the trial court did recognize that the only **independent** contact Repak had with the Commonwealth is that it

- 15 -

manufactured the machine which caused Appellee's injury. *See* Trial Ct. Op. at 7. Nevertheless, the court explicitly stated, "[i]n the present case, the [c]ourt seeks to assert specific jurisdiction over a corporation based **solely** on actions attributed to it by its co[-]defendant and agent." *Id.* at 8 (emphasis added). Indeed, in citing the court's opinion in its brief, Repak omits a crucial part of the trial court's statement, where it determined Repak "either itself **or through the actions of Reiser as its agent** performed many of the actions which authorize the use of the state long-arm statute." *See* Trial Ct. Op. at 4 (emphasis added); Repak's Brief at 27. Similarly, Repak claims that the court determined that Repak "**itself** reached out beyond its home in the Netherlands" to conduct business in the Commonwealth. Repak's Brief at 27 (quotation marks omitted). However, the court never found Repak took any actions in Pennsylvania independent of Reiser. Thus, to the extent Repak claims the court contradicted itself in its opinion, we disagree.

Furthermore, Pennsylvania's long-arm statute explicitly permits a court to exercise personal jurisdiction over a defendant who "acts directly **or by an agent**, as to a cause of action . . . arising from" the transaction of business in this Commonwealth. 42 Pa.C.S. § 5322(a) (emphasis added). Here, Repak does not dispute that Reiser transacted business in Pennsylvania by either soliciting business from Pennsylvania companies or shipping the Repak machine into Pennsylvania, and that Appellee's cause of action arose from that conduct. *See* 42 Pa.C.S. § 5322(a)(1)(i)-(iii). Thus, the question is whether Reiser's acts can be attributed to Repak under the Due Process

clause. As we will discuss *infra*, we believe that under the facts of this case, they can be.

We also conclude Repak's reliance on the Supreme Court's language in **Bristol-Myers Squibb** is misplaced.[8] In that case, "[m]ore than 600 plaintiffs, most of whom [were] **not** California residents, filed [a] civil action in a California state court against Bristol–Myers Squibb . . ., asserting a variety of state-law claims based on injuries allegedly caused by [its] drug called Plavix." **See Bristol-Myers Squibb**, 137 S.Ct. at 1777 (emphasis added). While Bristol-Myers Squibb engaged in some business in California, none of those business activities concerned the development, manufacture, labeling, or marketing of Plavix, and only "a little over one percent of the company's nationwide sales revenue" was generated from the sale of Plavix in California. *Id.* at 1778. Similarly, none of the nonresident plaintiffs obtained Plavix in California, or were treated for their injuries in California. *Id.* Nevertheless, the Supreme Court of California determined that because the resident and nonresident claims were "based on the same allegedly defective product and the assertedly misleading marketing and promotion of that product," specific jurisdiction could be exercised over the nonresident plaintiffs. *Id.* at 1779 (citation omitted).

---

[8] We noted that **Bristol-Myers Squibb** addressed personal jurisdiction under the Due Process Clause, not Pennsylvania's long-arm statute. **See Bristol-Myers Squibb**, 137 S.Ct. at 1779.

The United States Supreme Court disagreed, holding "the connection between the nonresidents' claims and the forum is . . . weak[; t]he relevant plaintiffs are not California residents and do not claim to have suffered harm in that State[, and] all the conduct giving rise to the nonresidents' claims occurred elsewhere." *Bristol-Myers Squibb*, 137 S.Ct. at 1782. Relevant herein, the Court also addressed the nonresident plaintiffs' argument that California courts could exercise personal jurisdiction over Bristol-Myers Squibb based upon its "decision to contract with a California company . . . to distribute [Plavix] nationally[.]" *Id.* at 1783 (citation omitted). In rejecting this claim, the Supreme Court opined:

> [I]t is not alleged that [Bristol-Myers Squibb] engaged in relevant acts together with [the California distributor] in California. Nor is it alleged that [Bristol-Myers Squibb] is derivatively liable for [the California distributor's] conduct in California. And the nonresidents "have adduced no evidence to show how or by whom the Plavix they took was distributed to the pharmacies that dispensed it to them." **The bare fact that [Bristol-Myers Squibb] contracted with a California distributor is not enough to establish personal jurisdiction in the State.**

*Id.* (citation omitted & emphasis added).

Repak seizes upon this language to support its general assertion that "[a] defendant's relationship with a third-party distributor, standing alone, is an 'insufficient basis for jurisdiction.'" Repak's Brief at 23-24 (citation omitted). While that was the Court's rationale in *Bristol-Myers Squibb*, Repak ignores the trial court's determination that Reiser's relationship with Repak was much more than simply a "third-party distributor" and, unlike in *Bristol-Myers Squibb*, this relationship was intimately connected to

Appellee's cause of action. *See* Trial Ct. Op. at 9-10. Thus, the Supreme Court's decision in *Bristol-Myers Squibb* does not support Repak's claims.

As part of its first issue, Repak also insists the trial court misapplied the concepts of "purposeful availment" and "fair play and substantial justice" when it opined that Repak's attempt to use its contract with Reiser to shield itself from liability "flies in the face of any notions of fair play[.]" Repak's Brief at 28-29 (citation omitted). Rather than concentrating on Repak's purported attempt to avoid jurisdiction, Repak argues the court's focus should have been on whether it had "purposefully availed" itself of the protections of Pennsylvania law, so that the exercise of jurisdiction in this Commonwealth comported with the notions of fair play and substantial justice. *Id.* at 29. We conclude, however, that this is a distinction without a difference. As the Supreme Court explained in *International Shoe*,

> due process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.

*International Shoe*, 326 U.S. at 316 (citations & quotation marks omitted). We interpret the trial court's comments as simply supporting its determination that Repak's association with Reiser provided the requisite "minimum contacts" to satisfy Due Process concerns. Thus, no relief is warranted on Repak's first claim.

G. **Specific Personal Jurisdiction under the Due Process Clause**

In its second through fourth issues, which we address together, Repak challenges the trial court's determination that its exercise of specific personal jurisdiction over Repak comports with the requirements of due process under the United States Constitution. First, it contends the trial court erred and abused its discretion when it found an agency relationship between Repak and Reiser such that it could "attribute to [Repak] the actions taken by Reiser within the Commonwealth." Repak's Brief at 30. Referring to agency law, Repak maintains that such a relationship requires the principal (Repak) to "manifest[ ] assent" that the agent (Reiser) will "act for him" and the agent agrees to do so with "the understanding . . . that the [principal] is to be in control of the undertaking." *Id.* at 31 (citations & emphasis omitted). It insists that the court fixated on "the limited activities of Reiser as a distributor for [Repak]" without properly considering whether the activities Reiser conducted in Pennsylvania were "at the direction or control of" Repak. *Id.* Indeed, Repak maintains the parties' Distribution Agreement does not "support[ ] the existence of an agency relationship between [Repak] and Reiser." *Id.* at 34 (emphasis omitted). *See also id.* at 31-32 (Distribution Agreement allowed Reiser to set its own prices and determine sales area, and made Reiser responsible for installation and maintenance of machines sold). Moreover, Repak argues that because it did not, on its own, conduct activities within the Commonwealth, and, thus, did not "purposefully avail[ ]" itself of the privileges of conducting activities within the Commonwealth, the trial court erred in determining that it could exercise personal jurisdiction over Repak in

Pennsylvania which comports with the requirements of due process. ***See id.*** at 35-37.

Repak also contends the trial court erred in relying on dicta in ***Daimler*** to support its decision. It maintains "[t]he facts in ***Daimler*** are readily distinguishable as the [Supreme] Court in that case was attempting to apply **general jurisdiction** to a foreign corporation based on the actions of its agent." Repak's Brief at 37 (emphasis added). Repak asserts any statements by the ***Daimler*** Court referring to "**specific jurisdiction**" was dicta, and, therefore, not "legally binding precedent as support" for the trial court's ruling. ***Id.*** at 38, 40 (emphasis added).

Repak's final due process challenge focuses on the trial court's statement that "Reiser is Repak's American agent, if not **subsidiary**." Repak's Brief at 40 (some emphasis omitted), *citing* Trial Ct. Op. at 9. Repak emphasizes that it "is a separate corporate entity from its distributor" and co-defendant, Reiser. ***Id.*** (record citation omitted). It explains that a parent/subsidiary "corporate construct . . . has been very clearly defined" in case law and requires a "single center of decision making and . . . aggregation of power" in the parent company. ***Id.*** at 40-41 (citations omitted). Repak insists there that "[t]here are absolutely no facts in evidence" to support a parent/subsidiary relationship between Repak and Reiser in the present case. ***Id.*** at 41.

We conclude that Repak's arguments are unavailing. First, Repak's focus on agency law is misplaced. Although the trial court referred to Reiser

as Repak's **agent**, it did so for jurisdictional purposes, within the confines of the parties' relationship as outlined in the Distribution Agreement. Jurisdictional case law does not require a traditional principal/agent relationship in order to consider whether one company's actions may be attributed to another company. Rather the focus is on whether the foreign defendant "purposefully availed" itself of the protections of the forum. As the Supreme Court explained in *J. McIntyre Machinery, Ltd. V. Nicastro*, 564 U.S. 873 (2011):

> [A] defendant may in an appropriate case be subject to jurisdiction without entering the forum — itself an unexceptional proposition — as where manufacturers or distributors "seek to serve" a given State's market. The principal inquiry in cases of this sort is whether the defendant's activities manifest an intention to submit to the power of a sovereign. In other words, the defendant must "purposefully avai[l] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Sometimes a defendant does so by sending its goods rather than its agents. The defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State.

*Id.* at 882 (citations omitted).

The Supreme Court's decision in *J. McIntyre* is instructive. In that case, the Supreme Court held the state of New Jersey could **not** exercise personal jurisdiction over a British company which manufactured a metal-shearing machine, despite the fact that the plaintiff was injured while operating the machine in New Jersey. *J. McIntyre*, 564 U.S. at 877-78. Similar to the case before us, the plaintiff asserted jurisdiction was proper

based on the following: (1) an independent distributor agreed to sell J. McIntyre machines in the United States and J. McIntyre did not sell any machines in the United States itself outside of this agreement; (2) J. McIntyre officials attended conventions in the United States, but none in New Jersey; and (3) no more than four machines (including the one at issue) ended up in New Jersey. *Id.* at 878. The Supreme Court concluded that while J. McIntyre "directed marketing and sale efforts at the **United States**[,]" the facts did not "show that J. McIntyre purposefully availed itself of the **New Jersey market**." *Id.* at 885-86 (emphases added).

Further, the Court rejected the "stream-of-commerce theory of jurisdiction" — that if a foreign defendant places a product in the "stream of commerce" and it is reasonably foreseeable that the product will end up in the forum state, Due Process concerns are satisfied. *See J. McIntyre*, 564 U.S. at 881-83. The *J. McIntyre* Court concluded that more directed conduct with the forum is required. *See id.* at 884. Because it determined that "[a]t no time did [J.McIntyre] engage in any activities in New Jersey that reveal[ed] an intent to invoke or benefit from the protections of its laws[,]" the Court held New Jersey could not exercise personal jurisdiction over J. McIntyre. *Id.* at 887.

Conversely, in the present case, Repak — through its distributor, Reiser — had a more focused connection to the Commonwealth of Pennsylvania. First, the Distribution Agreement appointed Reiser as Repak's "sole distributor

in the United States[.]" Trial Ct. Op. at 9; *see* Distribution Agmt at ¶¶ 1, 5.[9] Moreover, Repak agreed to provide "sales and service support to Reiser" in the United States, and permitted Reiser to use its trademarks. *See* Distribution Agmt, Appx. B at ¶¶ 7-8. The promotional materials, which were supplied by Repak, carried Reiser's name and address, and reflected the parties' joint marketing efforts. *See* Appellee's Brief in Opposition to Repak's Preliminary Objections to Appellee's Complaint at Exhibit N (Thermoformers brochure). Significantly, with respect to actions in this Commonwealth, in 2019, the sales representative for **Pennsylvania** was named the "**Repak Reiser** Salesman of the Year" and awarded a trip to the Netherlands. *See* Repak's Facebook Post (emphasis added). Further, Appellee avers, and Repak does not deny, that the machine at issue was "designed and manufactured by [Repak] for the known, express purpose for use in [Appellee's] employer's facility in Lebanon, Pennsylvania." Appellee's Preliminary Objections & Response to Repak's Time-Barred Preliminary Objections at 6; *see* Appellee's Brief in Opposition to Repak's Preliminary Objections to Appellee's Complaint, at 8-9 (detailing communications between Repak and Reiser resulting in delivery of machine at issue to Appellee's employer). Here, Repak was clearly

---

[9] We note that the parties amended their agreement effective July 1, 2014. *See* Distribution Agmt at Amendment A. The amendment provided that the agreement would continue in all the same respects with the exception that the parties would have a "non-exclusive relationship." *Id.* at ¶¶ 2, 9.

aware that its distributor, Reiser, was marketing and selling its products in Pennsylvania.[10]

This Court's decision in **C.J. Betters Corp. v. Mid South Aviation Services, Inc.**, 595 A.2d 1264 (Pa. Super. 1991), is instructive. In that case, the plaintiff, a Pennsylvania corporation, desired to purchase an aircraft. **Id.** at 1264-65. It contacted Mid South, an aircraft brokerage firm, which advertised in newspaper and trade journals distributed in jurisdictions including Pennsylvania. **Id.** In response to plaintiff's inquiry, Mid South located a jet for sale, which was owned by Shackelford, who lived in North Carolina. **Id.** The jet was flown to Mid South's headquarters in Florida, and plaintiff traveled to Florida to negotiate the purchase. **Id.** at 1265. Subsequently, after the plaintiff accepted delivery of the jet in Pennsylvania, the aircraft's right engine malfunctioned during a flight in Pennsylvania which necessitated an emergency landing. **Id.** When Mid South and Shackleford refused to pay for repairs, the plaintiff initiated two civil actions in Pennsylvania. **Id.**

---

[10] On April 26, 2021, Repak filed a brief response to Appellee's preliminary objections. It did not specifically deny any of Appellee's allegations concerning its contact with Pennsylvania. Rather, Repak averred that Appellee's contentions were "just red herrings." Response of Repak in Opposition to Appellee's Preliminary Objections & in Support of Repak's Preliminary Objections to Appellee's Complaint, 4/26/21, at 2 (unpaginated). Repak maintained: "Repak is a separate corporate entitled from Reiser and it has never regularly conducted or solicited business in Pennsylvania or engaged in any other persistent course of conduct in Pennsylvania." **Id.** Notably, it did not deny that it knew the machine at issue was manufactured for and sold to a Pennsylvania company.

Both Mid-South and Shackleford filed preliminary objections asserting that Pennsylvania courts lacked personal jurisdiction over them. The trial court agreed, and dismissed the cases. ***C.J. Betters***, 595 A.2d at 1265. On appeal, this Court reversed, holding that the exercise of jurisdiction over both defendants comported with the standards of due process. ***Id.*** at 1268-69. With regard to Mid-South, the panel concluded that the company knew it was selling the aircraft to a Pennsylvania buyer, that intended to use it in Pennsylvania. ***Id.*** at 1267-68. The court opined: "Mid-South's single 'act' of selling the [jet] to [plaintiff] does create a substantial connection with the forum. Mid-South 'purposely availed' itself of the privilege of conducting business in Pennsylvania." ***Id.*** at 1268 (citation omitted). Moreover, the panel noted that the cause of action for breach of warranty arose "from Mid-South's forum related activity[.]" ***Id.***

With regard to Shackelford, the panel first noted that "Mid-South was acting as Shackelford's agent[,]" and that Shackelford paid Mid-South for its role in the sale. ***C.J. Betters***, 595 A.2d at 1269. Moreover, the panel also emphasized the fact that Shackelford knew the buyer was a Pennsylvania company:

> Shackelford knew the aircraft was to be sold to a Pennsylvania corporation and willingly accepted a check for the purchase price of the plane from Betters. . . . Shackelford willingly delivered the airplane to Mid–South knowing full well that after certain cosmetic and mechanical changes, the plane would be delivered to Betters, a Pennsylvania corporation. This is not a case where a defendant having sold an article to one customer may fairly claim surprise when that same article later turns up in a third state. By taking

part in this transaction, Shackelford purposefully availed himself of the privilege of conducting business activities in Pennsylvania.

*Id.* (citations & footnote omitted).

The same principles apply in the case *sub judice*. Repak contracted with Reiser to sell its products in the United States, and was fully aware this included marketing its products in Pennsylvania, as evident by the "Repak/Reiser Pennsylvania salesman of the year" award. **See** Repak's Facebook Post. Moreover, Appellee provided documentation demonstrating that Repak **knew** the purchaser of the machine at issue was Appellee's employer, a Pennsylvania company. **See** Appellee's Brief in Opposition to Repak's Preliminary Objections to Appellee's Complaint at 8-9, Exhibits G-M. Thus, we conclude the trial court appropriately considered Repak and Reiser's relationship and concluded that Reiser's actions in Pennsylvania could be attributed to Repak for purposes of demonstrating personal jurisdiction under the facts presented here.

Repak also criticizes the trial court's reliance on dicta in **Daimler** to support its ruling. **See** Repak's Brief at 37-40. However, our review reveals the trial court was well aware the **Daimler** decision was not dispositive or controlling. **See** Trial Ct. Op. at 8. Indeed, the court stated that it was unable to find "[a] case in line with the facts presented here" — in which a trial court asserted "**specific** jurisdiction over a corporation based solely on actions attributed to it by its co[-]defendant and agent." **Id.** at 7-8 (emphasis added). The trial court referenced the **Daimler** decision, noting in that case, the Supreme Court rejected the California courts' assertion of "**general**

- 27 -

jurisdiction [over] a foreign corporation based on its agent's actions." ***Id.*** at 8 (emphasis added). However, the trial court observed that the ***Daimler*** Court "insinuate[d] several times that if the plaintiff had argued for specific jurisdiction . . . the outcome may have been different." ***Id.*** at 8. This observation was correct, and appropriate. ***See Daimler***, 571 U.S. at 132 ("Although the placement of a product into the stream of commerce 'may bolster an affiliation germane to **specific** jurisdiction,' . . . such contacts 'do not warrant a determination that, based on those ties, the forum has **general** jurisdiction over a defendant.'"); 133 ("Plaintiffs have never attempted to fit this case into the **specific** jurisdiction category."); 135 n.13 ("Agency relationships . . . may be relevant to the existence of **specific** jurisdiction[; a]s such a corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there.") (emphasis in original). Because the trial recognized the Supreme Court's comments in ***Daimler*** concerning **specific** jurisdiction were dicta and not dispositive, Repak is entitled to no relief.

Lastly, Repak argues that the record does not support the trial court's finding that Reiser was a subsidiary of Repak. ***See*** Repak's Brief at 40-41. Again, Repak mischaracterizes the trial court's opinion. The court did not determine that Repak was the parent company of Reiser — in fact, the trial court specifically referenced the affidavit of Repak's managing director, Mr. Fehrmann, who averred Repak is a "separate corporate entity from its distributor" Reiser. Trial Ct. Op. at 9 (record citation omitted). However,

regardless of the companies' separate corporate structures, the trial court concluded that they were "so closely tethered together in their business dealings that Reiser is Repak's American agent, if not subsidiary." *Id.* Clearly, the court's fleeting reference to Reiser as Repak's "subsidiary" was a matter of semantics; it was not intended to constitute a finding that Repak and Reiser had a parent/subsidiary relationship.

Therefore, we conclude the trial court's assertion of specific personal jurisdiction over Repak satisfied due process concerns, and Repak is entitled to no relief.

### H. **Trial Court's Consideration of Appellee's Recourse**

In its final claim, Repak argues that the trial court erred as a matter of law and abused its discretion when it concluded that "if it was to rule in favor of [Repak, Appellee] would be without recourse for her injuries in the courts of Pennsylvania." Repak's Brief at 41. First, it maintains the statement is false. Appellee's claims against Reiser — "the seller, installer and the entity responsible for maintenance and repairs" — would survive if Repak were dismissed from the action. *Id.* at 42. Reiser could then adjudicate any claims it might have against Repak in the Netherlands, pursuant to the terms of its distribution agreement. *Id.*; *see* Distribution Agmt at ¶ 15. Repak argues that the interests of the plaintiff are relevant only after it is determined the defendant has the requisite "minimum contacts" with the forum. *Id.* at 43.

Repak, once again, mischaracterizes the trial court's opinion. It is true that Appellee's claims against Reiser would survive if Repak were dismissed

from the case. Nevertheless, Appellee's only recourse against **Repak** — the manufacturer and designer of the machine — would be to file suit in the Netherlands. Moreover, Repak concedes that a trial court may consider the interests of the plaintiff in "obtaining convenient and effective relief" once — as here — minimum contacts have been established. *See Hammons*, 240 A.3d at 556 n.23 (under the "reasonable and fair" prong of the three-part test, courts should consider, *inter alia*, "the burden on the defendant [and] the **plaintiff's interest** in obtaining convenient and effective relief") (emphasis added), *citing **Burger King Corp. v. Rudzewicz***, 471 U.S. 462, 477 (1985). Thus, the trial court consideration of Appellee's interests was not an error of law or abuse of discretion.

## I. Conclusion

Therefore, we conclude the trial court did not err or abuse its discretion in overruling Repak's preliminary objections to Appellee's complaint, and determining that its exercise of specific personal jurisdiction over Repak in Pennsylvania does not offend either Pennsylvania's long-arm statute or the Due Process Clause of the United States Constitution.

Order affirmed.

President Judge Emeritus Stevens joins the Opinion.

Judge Bowes Concurs in the Result.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/6/2022