J-A04042-24

2024 PA Super 177

| | | |
|---|---|---|
| JAMALA KENNEDY, PARENT AND NATURAL GUARDIAN OF J.F., A MINOR AND JAMALA KENNEDY IN HER OWN RIGHT | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : : | |
| v. | : : : | No. 383 EDA 2023 |
| CROTHALL HEALTHCARE, INC., GENERAL ELECTRIC COMPANY AND DATEX-OHMEDA, INC. | : : : | |

Appeal from the Order Entered January 13, 2023
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  210602210

BEFORE:   STABILE, J., McLAUGHLIN, J., and COLINS, J.[*]

OPINION BY COLINS, J.:                    **FILED AUGUST 9, 2024**

Jamala Kennedy, in her own right and as parent of J.F. ("Plaintiff"), appeals from the October 28, 2022 order of the Court of Common Pleas of Philadelphia County ("trial court") sustaining the preliminary objections of defendants General Electric Company and Datex-Ohmeda, Inc. ("GE" and "Datex," respectively, and "GE Defendants," collectively) and dismissing the GE Defendants for lack of personal jurisdiction.  Plaintiff also appeals from the January 13, 2023 order granting the motion to dismiss for *forum non conveniens* filed by defendant Crothall Healthcare, Inc. ("Crothall").  After careful review, we affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

This matter arises out of injuries J.F. sustained on October 26, 2017, during a tonsillectomy and adenoidectomy performed at Shands Jacksonville Medical Center ("Shands") in Jacksonville, Florida. According to the complaint, J.F. sustained permanent brain damage and was left in a persistent vegetative state based upon the use of a defective and unsafe Aisys CS2 anesthesia system ("Anesthesia System"), a machine responsible for anesthesia delivery, ventilation, monitoring, and breathing assistance. Datex, a subsidiary of GE, manufactured the Anesthesia System. Crothall, an independent entity, had serviced the Anesthesia System prior to J.F.'s injury.

Plaintiff initiated this suit in the trial court in June 2021 and filed her complaint shortly thereafter on September 8, 2021. The GE Defendants subsequently removed the case to federal court; however, on June 14, 2022, the district court granted Plaintiff's motion to remand, ruling that Crothall had not been fraudulently joined as a defendant to defeat federal diversity jurisdiction.

Following remand, the GE Defendants filed preliminary objections, asserting that the trial court lacked general and specific personal jurisdiction over them. Plaintiff filed a response in opposition to the preliminary objections, and the GE Defendants filed a reply. Thereafter, the trial court authorized discovery as to the jurisdictional issue and directed that the parties file supplemental briefs. The record following jurisdictional discovery revealed that GE is incorporated in New York and headquartered in Massachusetts, while Datex is a Delaware corporation, with a principal place of business of

Wisconsin. GE Defendants' Supplemental Brief In Support of Preliminary Objections, 9/21/22, Exhibit C, ¶¶3-4. The Anesthesia System was designed and manufactured in Wisconsin and sold to Shands by Datex's agent in Florida. *Id.*, ¶¶7-9. However, the invoice that was sent by Datex to Shands indicated that payment for the Anesthesia System was to be sent to a P.O. Box in Pittsburgh, which was maintained by Bank of America, the GE Defendants' bank. Plaintiff's Supplemental Brief In Opposition to GE Defendants' Preliminary Objections, 9/21/22, at 5, Exhibit A at 3, Exhibit B at 102.

On October 28, 2022, the trial court entered an order sustaining the GE Defendants' preliminary objections and dismissing them from the case. Meanwhile, on July 25, 2022, Crothall, which is headquartered in Wayne, Pennsylvania, filed an answer and new matter, in which it asserted that the matter should be transferred to an appropriate court in Florida pursuant to the doctrine of *forum non conveniens*. On September 2, 2022, Crothall filed a motion to dismiss for *forum non conveniens*. Plaintiff filed a response, and the trial court then issued an order authorizing discovery on the motion to dismiss and directing supplemental briefing. On January 13, 2023, the trial court entered an order granting the motion and dismissing the complaint without prejudice to Plaintiff refiling in Florida or another appropriate jurisdiction.

Plaintiff then filed this timely appeal, in which it challenges both the trial court's personal jurisdiction and *forum non conveniens* rulings.[1] Plaintiff filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), as directed by the trial court, and on May 30, 2023, the trial court filed an opinion explaining its reasoning underlying the appealed from orders.

Plaintiff raises the following issues for our review:

1. Whether the trial court erred as a matter of law in ruling that personal jurisdiction was lacking over [the GE Defendants] in Pennsylvania because: (a) both corporations have registered to do business in this Commonwealth, thereby consenting to the exercise of general jurisdiction over them; and (b) these defendants had established a specific Pennsylvania address to which they directed that the significant payments for the sale and installation fees of the subject anesthesia system that caused [P]laintiff's injuries be sent?

2. Whether, given this Court's reversals of *forum non conveniens* dismissals under nearly identical circumstances in ***Vaughan v. Olympus America, Inc.***, 208 A.3d 66 (Pa. Super. [] 2019), and ***McConnell v. B. Braun Med. Inc.***, 221 A.3d 221 (Pa. Super. [] 2019), the trial court's *forum non conveniens* dismissal of [P]laintiff's claims against Crothall [] in this case should similarly

_____

[1] Plaintiff initially sought to appeal the trial court's October 28, 2022 order finding that the court lacked personal jurisdiction over the GE Defendants via a January 3, 2023 petition for permission to appeal. In that petition, Plaintiff noted that she had filed a motion for reconsideration of the lower court's October 28, 2022 order, which included a request for certification of the interlocutory order as immediate appeal pursuant to 42 Pa.C.S. § 702(b); the motion was deemed denied when the trial court failed to rule on it within 30 days. *See* Pa.R.A.P. 1311(b). On February 9, 2023, while the petition for permission to appeal remained pending, Plaintiff filed the instant notice of appeal from the January 13, 2023 order dismissing Crothall as the remaining defendant in the case. This Court then dismissed Plaintiff's petition for permission to appeal and directed that any issue properly preserved with respect to the October 28, 2022 order may be raised in this appeal. Order, No. 1 EDM 2023, 5/5/23.

be reversed because it was predicated on legal error and otherwise constituted a reversible abuse of discretion?

Plaintiff's Brief at 3-4.

Plaintiff initially challenges the trial court's order sustaining the GE Defendants' preliminary objections based upon a lack of personal jurisdiction. We review the court's ruling to determine whether it has committed an error of law or abuse of discretion. *Fulano v. Fanjul Corp.*, 236 A.3d 1, 12 (Pa. Super. 2020). "An appellate court applies the same standard as the trial court in determining the appropriateness of a ruling on preliminary objections." *Merino v. Repak, B.V.*, 286 A.3d 1249, 1255 (Pa. Super. 2022) (citation and quotation marks omitted).

> When deciding a motion to dismiss for lack of personal jurisdiction the trial court must consider the evidence in the light most favorable to the non-moving party. Once the moving party supports its objections to personal jurisdiction, the burden of proving personal jurisdiction is upon the party asserting it. Courts must resolve the question of personal jurisdiction based on the circumstances of each particular case.

*Id.* (citation omitted) (cleaned up); *see also Fulano*, 236 A.3d at 12.

> The Due Process Clause of the Fourteenth Amendment to the United States Constitution limits the authority of a state to exercise *in personam* jurisdiction over nonresident defendants. The extent to which the Due Process Clause proscribes jurisdiction depends on the nature and quality of the defendant's contacts with the forum state. Where a defendant has established no meaningful contacts, ties or relations with the forum, the Due Process Clause prohibits the exercise of personal jurisdiction. However, where a defendant has purposefully directed his activities at the residents of the forum, he is presumed to have fair warning that it may be called to suit there.

*Fulano*, 236 A.3d at 13 (citations and quotation marks omitted).

"A corporate defendant's activities within the Commonwealth 'may give rise to either specific or general jurisdiction.'" **Merino**, 286 A.3d at 1256 (quoting **Fulano**, 236 A.3d at 13); **see also Hammons v. Ethicon, Inc.**, 240 A.3d 537, 555 (Pa. 2020). General jurisdiction exists in "situations where a corporation's connections are 'so continuous and systematic as to render them essentially at home in the forum State,' allowing for jurisdiction over causes of action unrelated to in-state activities." **Hammons**, 240 A.3d at 555 (quoting **Goodyear Dunlop Tires Operations, S.A. v. Brown**, 564 U.S. 915, 919 (2011)). Specific jurisdiction, on the other hand, applies where there are "more limited connections with a state which restrict jurisdiction to causes of action 'where there is an affiliation between the forum and the underlying controversy.'" **Id.** (quoting **Goodyear**, 564 U.S. at 919).

Plaintiff argues that the trial court was permitted to assert both general and specific jurisdiction over the GE Defendants. With respect to general jurisdiction, Plaintiff contends that Pennsylvania courts have general jurisdiction over the GE Defendants based upon the fact that they registered as foreign corporation in the Commonwealth. Under Section 5301 of the Judicial Code, "qualification as a foreign corporation under the laws of this Commonwealth . . . constitute[s] a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such person." 42 Pa.C.S. § 5301(a)(2)(i); **see also** 15 Pa.C.S. § 411(a), (f) (providing that a foreign corporation "may not do business in this Commonwealth until it registers" with the Pennsylvania Department of State

and that the foreign corporation must also maintain an office in the Commonwealth as part of the registration process). Plaintiff notes that it submitted evidence in response to the preliminary objections showing that the GE Defendants are registered to do business in Pennsylvania. *See* Plaintiff's Response to GE Defendants' Preliminary Objections, 7/12/22, Exhibit H.

The issue of whether Pennsylvania courts may assert general jurisdiction over a foreign corporation based simply on its registration to do business in the Commonwealth was the subject of a recent United States Supreme Court decision, *Mallory v. Norfolk Southern Railway Co.*, 600 U.S. 122 (2023). In *Mallory*, the High Court heard an appeal from our Supreme Court, which had held that the foreign corporation registration provision of Section 5301 violates the Due Process Clause of the Fourteenth Amendment because jurisdiction was premised on a foreign corporation's registration rather than the continuous and systematic exercise of business in Pennsylvania. 600 U.S. at 127; *Mallory v. Norfolk Southern Railway Co.*, 266 A.3d 542, 565-68 (Pa. 2021), *vacated*, 600 U.S. 122 (2023). The United States Supreme Court reversed, holding that the Pennsylvania statute does not offend due process because, by registering in Pennsylvania, the foreign corporation voluntarily consents to suit in the Commonwealth in order to avail itself of the opportunity to do business here. *Mallory*, 600 U.S. at 134-36.

Plaintiff contends that *Mallory* must be given retroactive effect in the present litigation as it was issued during the pendency of this appeal, and we therefore must reverse the trial court's erroneous decision finding that

personal jurisdiction was not proper over the GE Defendants. **See** Plaintiff's Brief at 17 (citing **Harper v. Virginia Department of Taxation**, 509 U.S. 86, 96 (1993) ("[A] rule of federal law, once announced and applied to the parties to the controversy, must be given full retroactive effect by all courts adjudicating federal law.")). By contrast, the GE Defendants contend that Plaintiff has waived this argument because she explicitly disclaimed any reliance on general jurisdiction in her response to the preliminary objections and raised the issue for the first time on appeal.[2]

We agree with the GE Defendants that Plaintiff has waived any argument based on general jurisdiction principles. "As a general matter, it is axiomatic that issues not raised in lower courts are waived for purposes of appellate review, and they cannot be raised for the first time on appeal." **Trigg v. Children's Hospital of Pittsburgh of UPMC**, 229 A.3d 260, 269 (Pa. 2020); **see also** Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

> Requiring issues to be properly raised first in the trial court ensures that trial judges have the opportunity to consider a potential appellate issue and correct any error at the first available opportunity. It also promotes the orderly and efficient use of

---

[2] In the alternative, the GE Defendants argue that we should address the argument foreshadowed by Justice Alito in his concurrence in **Mallory** that Section 5301 violates "the so-called dormant Commerce Clause" of the United States Constitution, which "prohibits state laws that unduly restrict interstate commerce." **Mallory**, 600 U.S. at 157 (Alito, J., concurring) (citation omitted); **see also** U.S. Const. Art. I, § 8, cl. 3. In light of our agreement with the GE Defendants on waiver, we need not address their dormant Commerce Clause argument.

judicial resources, ensures fundamental fairness to the parties, and accounts for the expense attendant to appellate litigation.

***Trigg***, 229 A.3d at 269 (citations omitted). The doctrine of waiver applies even where the issue is one of constitutional dimensions. ***In the Interest of T.W.***, 261 A.3d 409, 425 n.9 (Pa. 2021).

Even a rule that is entitled to retroactive application is subject to waiver if the issue was not raised in the trial court. As our Supreme Court has explained, "where an appellate decision overrules prior law and announces a new principle, unless the decision specifically declares the ruling to be prospective only, the new rule is to be applied retroactively to cases **where the issue in question is properly preserved at all stages of adjudication up to and including any direct appeal**."[3] ***Commonwealth v. Cabeza***, 469 A.2d 146, 148 (Pa. 1983) (emphasis added). The Court recently reaffirmed this "well-established" issue preservation requirement in ***Commonwealth v. Hays***, 218 A.3d 1260, 1266 (Pa. 2019), specifically rejecting a modified rule proposed by the appellant that would "consider an issue preserved when it is raised in a timely fashion after the creation of the

_____

[3] Notably, the United States Supreme Court held in ***Mallory*** that it was not announcing a new rule but instead relying on its century-old opinion in ***Pennsylvania Fire Insurance Co. of Philadelphia v. Gold Issue Mining & Milling Co.***, 243 U.S. 93 (1917). ***See Mallory***, 600 U.S. at 134 ("***Pennsylvania Fire*** controls this case."). However, as our Supreme Court's decision finding the relevant portion of Section 5301 unconstitutional was the prevailing law in Pennsylvania at the time the GE Defendants' preliminary objections were litigated, we deem ***Mallory*** to have announced a "new rule" for the purpose of our waiver analysis.

new rule on which it is grounded." *Id.* at 1266-67 (citation and emphasis omitted) (holding that appellant was not entitled to benefit of new rule announced in United States Supreme Court decision filed the day after his jury verdict, where the issue was not raised at or before trial).

Plaintiff's complaint alleged that, among various asserted grounds for jurisdiction over the GE Defendants, they were "further subject to the jurisdiction of [the trial c]ourt by virtue of their registration to do business in the Commonwealth." Complaint, 9/8/21, ¶15. The GE Defendants addressed Plaintiff's general jurisdiction claim in their preliminary objections, specifically arguing that "general jurisdiction does **not** lie based solely on a foreign corporation's registration to do business in Pennsylvania." GE Defendants' Preliminary Objections, 6/23/22, ¶20 (emphasis in original) (citing our Supreme Court's decision in *Mallory*). Once the jurisdictional issue was raised, the burden shifted to Plaintiff demonstrate that the trial court could exercise personal jurisdiction over the GE Defendants. *Hammons*, 240 A.3d at 561; *Merino*, 286 A.3d at 1255, 1257. In her response, Plaintiff's arguments were all directed toward specific jurisdiction, and she categorically stated that she was "not relying upon any argument as to general personal jurisdiction for [the] GE [Defendants] and is instead relying on specific personal jurisdiction." Plaintiff's Response to GE Defendants' Preliminary Objections, 7/12/22, at 21. While Plaintiff cited the GE Defendants' foreign corporation registration in her response and attached Department of State records as an exhibit, this reference was in the context of the analysis of

- 10 -

whether the GE Defendants purposively availed themselves of the privilege of conducting business in Pennsylvania, a facet of the specific jurisdiction analysis. Plaintiff's Response to GE Defendants' Preliminary Objections, 7/12/22, at 12 & Exhibit H; *see Hammons*, 240 A.3d at 556 ("specific jurisdiction [occurs when] . . . a defendant 'purposefully avails itself of the privilege of conducting activities within the forum state'") (citation omitted).[4]

In light of Plaintiff's failure to raise foreign corporation registration as a basis upon which the trial court could assert jurisdiction over the GE Defendants, we must conclude that Plaintiff waived the issue for purposes of this appeal. Pa.R.A.P. 302(a); *Trigg*, 229 A.3d at 269. A finding of waiver is reinforced in this matter where Plaintiff bore the burden of proving the grounds for personal jurisdiction, yet she expressly renounced any reliance on general jurisdiction. Furthermore, any retroactive application of *Mallory* is of no benefit to Plaintiff as our Supreme Court has specifically rejected the argument that a new rule declared after trial excuses a party's failure to raise the issue in the trial court. *See Hays*, 218 A.3d at 1266-67.

We therefore turn to Plaintiff's arguments regarding specific jurisdiction. As stated above, specific jurisdiction "depends on an affiliation between the

---

[4] Plaintiff also did not assert foreign corporation registration as a basis for general jurisdiction in her supplemental and supplemental sur-reply briefs filed in the trial court after discovery was allowed on the jurisdictional objections. Plaintiff likewise failed to raise the issue in her Pa.R.A.P. 1925(b) statement, and the trial court did not address foreign corporation registration in its corresponding May 30, 2023 opinion. *Mallory* was decided several weeks later, on June 27, 2023.

forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Fulano*, 236 A.3d at 13 (citation omitted) (cleaned up). "[W]hen a defendant purposefully avails itself of the privilege of conducting activities within the forum state, it submits to the judicial power of an otherwise foreign sovereign to the extent that power is exercised in connection with the defendant's activities touching on the State." *Hammons*, 240 A.3d at 556 (citation omitted) (quotation marks and ellipsis omitted).

> At its most simplistic, the question for specific personal jurisdiction is whether the defendant has sufficient "minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. State of Washington, Office[] of Unemployment Compensation & Placement*, 326 U.S. 310, 316[] (1945). Requiring minimum contacts satisfies due process by ensuring that the defendant may "reasonably anticipate" where it may be "haled into court" based upon which forums it has "purposefully avail[ed] itself of the privilege of conducting activities." [*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985).] This requirement ensures that a defendant will not be subject to jurisdiction "solely as a result of random, fortuitous, or attenuated contacts." [*Id.* at 475.]

*Merino*, 286 A.3d at 1256 (quoting *Hammons*, 240 A.3d at 556) (some brackets omitted; some citations omitted in original).

As our Supreme Court has noted, courts have relied on the following three-part test to determine whether specific jurisdiction exists in a particular case:

> (1) Did the plaintiff's cause of action arise out of or relate to the out-of-state defendant's forum-related contacts?

(2) Did the defendant purposely direct its activities, particularly as they relate to the plaintiff's cause of action, toward the forum state or did the defendant purposely avail itself of the privilege of conducting activities therein?

(3) Would the exercise of personal jurisdiction over the nonresident defendant in the forum state satisfy the requirement that it be reasonable and fair?

*Hammons*, 240 A.3d at 556 (citation omitted) (brackets omitted); *see also Merino*, 286 A.3d at 1256-57.

In its opinion, the trial court observed that "the only [Pennsylvania-related] activity or occurrence averred is the existence of the Bank of America lockbox located in Pittsburgh, PA." Trial Court Opinion, 5/30/23, at 8 (emphasis omitted). Yet, as the court stated, the "lockbox [was] maintained by a separate independent entity, in this case Bank of America." *Id.* at 5 (emphasis omitted). The court explained that "[i]mportantly, this is a product liability case, not a contractual dispute case," and there were "no allegations that the payment processing for the" Anesthesia System through the lockbox caused the injuries to J.F. *Id.* at 8. By contrast, all other relevant factors occurred out of state: the injury occurred in Florida, the sales representative who sold the Anesthesia System and the employees who installed it were based in Florida, and training on the equipment took place in Florida. *Id.* at 9. Furthermore, the Anesthesia System was not designed or manufactured in Pennsylvania, and no GE or Datex "employees with knowledge about its design, manufacture, sale[,] or installation are located in Pennsylvania." *Id.* (citation omitted). "Therefore, given that all activities that are relevant to

- 13 -

Plaintiff['s] injuries occurred outside of the Commonwealth," the court determined that specific jurisdiction did not exist for the GE Defendants in Pennsylvania. *Id.*

Plaintiff claims that the trial court erred in finding an absence of specific jurisdiction over the GE Defendants, focusing her argument entirely on the Pittsburgh P.O. box address listed on the Anesthesia System invoice. Plaintiff notes that our caselaw does not answer the question of "whether a product manufacturer's choice to require that payment for a defective piece of machinery be mailed to a Pennsylvania address suffices to confer specific personal jurisdiction," and that there is conflicting caselaw on whether the sending of payments to a Pennsylvania address is sufficient to establish personal jurisdiction over the purchasers. Plaintiff's Brief at 19 (citing, *inter alia*, **Aventis Pasteur, Inc. v. Alden Surgical Co., Inc.**, 848 A.2d 996 (Pa. Super. 2004), and **Bean Sprouts LLC v. LifeCycle Construction Services LLC**, 270 A.3d 1237 (Pa. Super. 2022)). Nevertheless, Plaintiff contends that this case is distinguishable because the GE Defendants "are not out-of-state purchasers but, rather, are sellers who voluntarily established a Pennsylvania address and thereafter directed the purchaser to send the proceeds for the sale of the [Anesthesia System] and its installation services to that Pennsylvania address." *Id.* at 20. Plaintiff asserts that the sending of payment by Shands to Pennsylvania was a necessary condition for injury because, "without such payment directed to and through this Commonwealth, the [Anesthesia System] would never have been placed into service, and [J.F.]

- 14 -

would not have been injured." ***Id.*** Plaintiff further avers that it would be reasonable and fair for the GE Defendants to defend itself in Pennsylvania, as all five factors of the applicable test are satisfied here.[5]

We find no error of law or abuse of discretion in the trial court's jurisdictional ruling as the evidence supports the finding that the GE Defendants did not purposely direct their activities towards Pennsylvania and Plaintiff's cause of action did not in any meaningful way arise out of the GE Defendants' contact with the Commonwealth. First, notwithstanding Plaintiff's bald assertions to the contrary, Plaintiff adduced no evidence that the GE Defendants "voluntarily" established an address in Pennsylvania for receipt of proceeds related to the sale and installation of the Anesthesia System. Plaintiff's Brief at 18-20. Rather, the evidence demonstrated only that Bank of America, the GE Defendants' bank, maintained a lockbox in Pittsburgh that was used for payments associated with the subject apparatus. Plaintiff's Supplemental Brief In Opposition to GE Defendants' Preliminary Objections, 9/21/22, Exhibit B at 102. Plaintiff presented nothing showing that the GE

_____

[5] As our Supreme Court has explained, courts consider the following five factors when determining whether the exercise of personal jurisdiction would be "reasonable and fair": "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." ***Hammons***, 240 A.3d at 556-57 n.23 (quoting ***Burger King***, 471 U.S. at 477). As we agree with the trial court's analysis under the first and second prongs of the specific jurisdiction test, we do not address the application of the reasonableness factors in this decision.

Defendants had any role in the administration of the lockbox. There is also no indication that the GE Defendants specifically requested that the payments be sent to a lockbox in Pennsylvania rather than a lockbox in some other state. Thus, the record simply does not support Plaintiff's claim that the decision of where to locate the lockbox was the GE Defendants' "own choice and not random, isolated, or fortuitous" contact with Pennsylvania. **Ford Motor Co. v. Montana Eighth Judicial District Court**, 592 U.S. 351, 359 (2021) (stating that for specific jurisdiction to hold, the contacts "must show that the defendant deliberately 'reached out beyond' its home—by, for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship centered there") (citation and quotation marks omitted); **see also Bean Sprouts**, 270 A.3d at 1241 (in specific jurisdiction analysis, court "must focus on whether [the defendant's] actions are sufficient to establish that it intentionally relied on the machinery of Pennsylvania justice in some fashion").

Even assuming that the Pennsylvania lockbox demonstrates a purposeful contact by the GE Defendants with Pennsylvania, specific jurisdiction also fails because this contact has only the most tenuous of connections to the claims asserted by Plaintiff in her complaint. A review of two recent United States Supreme Court cases with divergent results illustrates why personal jurisdiction is lacking here. In **Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County**, 582 U.S. 255 (2017), the High Court held that non-California resident plaintiffs could not

sue Bristol-Meyers based upon its manufacture of an allegedly harmful pharmaceutical drug when the plaintiffs had not been prescribed the drug, or ingested it, in California. 582 U.S. at 258-59, 264-66. Even though Bristol-Meyers had contracted with a California company to distribute the subject drug, specific jurisdiction did not attach where there was no additional allegations or evidence showing relevant conduct by Bristol-Meyers in California, its derivative liability for the distributor's conduct, or connecting the distributor to the drugs actually ingested by the plaintiffs. *Id.* at 268 ("The bare fact that [Bristol-Meyers] contracted with a California distributor is not enough to establish personal jurisdiction in the State."). By contrast, in *Ford Motor*, the High Court held that personal jurisdiction was present in a lawsuit brought against Ford concerning the alleged malfunction of its vehicles where the plaintiffs were resident of the forum states, drove the vehicles there, and sustained their injuries in the forum states. 592 U.S. at 356, 370. The Court explained that the plaintiffs "brought suit in the most natural State" based upon the connection between the injury and the forum, distinguishing *Bristol-Meyers* as a case of "forum-shopping," with the plaintiffs in that case "suing in California because it was thought plaintiff-friendly, even though their cases had no tie to the State." *Id.* at 370.

This case bears a much stronger resemblance to *Bristol-Myers* than *Ford Motor*. Plaintiff and J.F. are residents of Florida, not Pennsylvania, and J.F. sustained her injuries at Shands, a Florida hospital. Furthermore, the Anesthesia System that allegedly caused J.F.'s injuries was not designed or

- 17 -

manufactured in Pennsylvania nor was it sold from the Commonwealth. Plaintiff has identified a single contact between the GE Defendants and Pennsylvania which her claim allegedly arises out of—the payment for the Anesthesia System to the Bank of America lockbox—yet as the trial court aptly pointed out, "this is a product liability case, not a contractual dispute case," and there were "no allegations that the payment processing for the" Anesthesia System caused J.F.'s injuries. Trial Court Opinion, 5/30/23, at 8; *see Bristol-Myers*, 582 U.S. at 268 ("bare fact" of defendant's contractual relationship with third party in forum state that had no relationship to injury or cause of action does not establish personal jurisdiction); *Walden v. Fiore*, 571 U.S. 277, 286 (2014) (stating that "a defendant's relationship with a . . . third party [in the forum], standing alone, is an insufficient basis for" finding that specific jurisdiction exists as to the defendant). In this case, as in *Bristol-Meyers*, "all the conduct giving rise to the [Plaintiff's] claims occurred elsewhere." 582 U.S. at 265.

Our precedent supports a finding that specific jurisdiction is lacking here. In *Bean Sprouts*, we held that, in a contract dispute concerning allegedly withheld money on Alabama and California construction projects, the defendant-prime contractor did not have sufficient contacts with Pennsylvania based solely upon payments mailed to the plaintiff-subcontractor's headquarters in the Commonwealth. 270 A.3d at 1238-39, 1241-43 (stating that trial court was permitted to "devalue" defendant's mailing of payments to Pennsylvania, "as these circumstances do not clearly establish that [the

defendant] was purposefully availing itself of Pennsylvania as a forum"). Similarly, in *Fidelity Leasing, Inc. v. Limestone County Board of Education*, 758 A.2d 1207 (Pa. Super. 2000), we concluded that the plaintiff, a Pennsylvania-based photocopier leasing company, could not assert personal jurisdiction over a Georgia entity that it contracted with based only upon the entry into a contract with the plaintiff and sending payments to Pennsylvania. *Id.* at 1209, 1211-13. Although both *Bean Sprouts* and *Fidelity Leasing* found jurisdiction lacking, the payments directed into Pennsylvania in those cases bore some relation to the claims asserted premised upon the defendants' alleged breach of contract. Here, by contrast, the fact that the payments to the GE Defendants were sent to a Pennsylvania lockbox has no bearing on whether the design, manufacture, installation, or servicing of the Anesthesia System caused J.F.'s injuries.

Plaintiff relies on two cases where jurisdiction was found based in part on payments mailed into Pennsylvania, yet both are readily distinguishable from the instant facts. In *GMAC v. Keller*, 737 A.2d 279 (Pa. Super. 1999), the defendant, a Florida resident, purchased three vehicles from a Pennsylvania dealership, using the defendant, a Pennsylvania financing company, for each purchase, and the financing contract that provided the basis for the underlying action stated that it was "[f]or use in the State of Pennsylvania." *Id.* at 280, 282. In *Aventis Pasteur*, the defendant was found to have sufficient minimum contacts with Pennsylvania where it engaged in "regular and continuous" contact with the plaintiff, a Pennsylvania

- 19 -

company, including placing sixteen separate purchase orders for a pharmaceutical product manufactured in Pennsylvania. 848 A.2d at 998, 1000-01. As we recently explained, *GMAC* and *Aventis Pasteur* do not support a finding of personal jurisdiction based on the mere payment of funds into the Commonwealth, as "[b]oth cases involved out-of-state defendants who intentionally sought out Pennsylvania corporations to do business, and the work encompassed within those contracts was performed in Pennsylvania." *Bean Sprouts*, 270 A.3d at 1242.

Accordingly, in light of the fact that the GE Defendants' sole contact with Pennsylvania is the Bank of America lockbox, no evidence was submitted showing that the GE Defendants purposefully sought Pennsylvania as the locale where it would receive payment on the Anesthesia System, and the payments directed to Pennsylvania had no relation to the allegations in Plaintiff's complaint, we conclude that the trial court did not err or abuse its discretion in granting the GE Defendants' preliminary objections as to personal jurisdiction. We therefore turn to Plaintiff's second issue relating to the grant of Crothall's motion to dismiss for *forum non conveniens*.

We review a trial court's decision granting a motion for a change of venue based on *forum non conveniens* for an abuse of discretion. *James v. Wal-Mart Distribution Center*, 310 A.3d 316, 319 (Pa. Super. 2024). The doctrine of *forum non conveniens* "allows the dismissal of a case when the evidence shows that another forum would be more appropriate." *McConnell v. B. Braun Medical Inc.*, 221 A.3d 221, 227 (Pa. Super. 2019); *see* 42

Pa.C.S. § 5322(e) ("When a tribunal finds that in the interest of substantial justice the matter should be heard in another forum, the tribunal may stay or dismiss the matter in whole or in part on any conditions that may be just."). The party seeking dismissal on *forum non conveniens* grounds bears the burden of proof. ***Failor v. FedEx Ground Package System, Inc.***, 248 A.3d 527, 535 (Pa. Super. 2021)

The trial court may grant a motion to dismiss for an inconvenient forum only if "weighty reasons" support the decision and an alternative forum is available. ***McConnell***, 221 A.3d at 227; ***Failor***, 248 A.3d at 534. When assessing whether to disturb the plaintiff's choice of forum, the trial court must consider private factors, including,

> the relative ease of access to sources of proof; availability of compulsory process for attendance for unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of the premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

***McConnell***, 221 A.3d at 227 (citation omitted). The court must also consider factors affecting the public interest, including that

> administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. There is an appropriateness, too, in having the trial . . . in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

***Id.*** at 227-28 (citation omitted).

In its opinion explaining the rationale for granting Crothall's motion to dismiss, the trial court stated that, based upon its review of the briefs and evidence submitted by the parties, its analysis of the private factors "overwhelmingly suggest[ed] that weighty reasons exist that necessitate interference with Plaintiff['s] choice of forum." Trial Court Opinion, 5/30/23, at 11. The court noted that all of the relevant identified witnesses, including the Shands employees who performed the underlying procedure on J.F. and the Crothall employees who were involved with the Anesthesia System, are from Florida; the events at issue all occurred in Florida; and the subject Anesthesia System itself is sequestered in Florida. *Id.* The court stated that it would be more costly for Crothall to access the Florida witnesses and evidence if the case remained in Pennsylvania and it lacked the ability to effect compulsory process if any Florida-based witnesses chose not to attend. *Id.* The court further noted that there was no indication that any relevant evidence could be gathered from Crothall's headquarters or Pennsylvania-based employees, while the Florida-based Crothall employees represented in filings that it would be a personal and professional inconvenience for them to travel to Philadelphia for trial. *Id.*

The trial court found that the public factors also "overwhelmingly" favor dismissal. *Id.* at 12. While Pennsylvania "has some level of interest in holding its resident corporations accountable for allegedly tortious behavior," the court stated that a Philadelphia jury "should not face the imposition of hearing a case where all relevant activities and parties are related to Florida." *Id.* The

court additionally noted that, should the case remain in Pennsylvania, it will face complicated conflict of laws issues in adjudicating actions that occurred in Florida, involving the interpretation of a service agreement entered into under Florida law. *Id.*

Plaintiff argues that Crothall did not clear the very high bar established by Pennsylvania courts for dismissal of a Pennsylvania-domiciled company on *forum non conveniens* grounds, and therefore, the trial court abused its discretion in granting the motion to dismiss. Regarding the private factors that the trial court found to weigh in favor of dismissal, Plaintiff contends that the witnesses and evidence necessary to prove Crothall's negligence are likely based at the company's suburban Philadelphia headquarters, where the policies regarding the inspection and maintenance of the Anesthesia System were formulated. Plaintiff contends that the Florida witnesses Crothall proffered in discovery on the motion to dismiss demonstrated only that they had virtually nothing to do with the subject machine and not that Pennsylvania witnesses and evidence would be unnecessary for this case. To the extent required, discovery and depositions in Florida will not be a hindrance because both Pennsylvania and Florida are signatories to the Uniform Interstate Depositions and Discovery Act. Plaintiff further argues that the trial court made a fundamental error in assessing the motion to dismiss when it focused on her burden in litigating in the Commonwealth, which is improper under our caselaw as the plaintiff is presumed to take into account her own inconvenience in selecting a forum.

Concerning the public factors that the court was required to consider, Plaintiff maintains that Pennsylvania has a strong interest in ensuring a company domiciled within its borders is not negligently maintaining anesthesia equipment anywhere in the United States, including Pennsylvania. Further, Philadelphia courts are not too busy to hear this case, and trial court judges are capable of applying the substantive law of another state. Lastly, Plaintiff argues that Pennsylvania jurors have a strong interest in ensuring that a Pennsylvania company such as Crothall receives a just outcome based upon its involvement in J.F.'s injury.[6]

Upon review, we discern no abuse of discretion by the trial court in dismissing Crothall from this case. The trial court comprehensively detailed the factors particular to this case that militate in favor of finding Pennsylvania to be an inconvenient forum: J.F.'s injuries were sustained in Florida, all identified potential witnesses reside outside Pennsylvania, the Anesthesia

_____

[6] Plaintiff also argues that the trial court was mistaken to grant Crothall's motion to dismiss when Pennsylvania is the only state where all three defendants can be sued together because personal jurisdiction against the GE Defendants "would not be assured in Florida." Plaintiff's Brief at 32. Plaintiff waived this argument by not including it in her Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. *See* Pa.R.A.P. 1925(b)(4)(vii); Trial Court Opinion, 5/30/23, at 12-13 (noting that Plaintiff did not raise the "alternative forum" prong of *forum non conveniens* analysis in her concise statement). In any event, we would reject this argument for two reasons. First, as we have already held, personal jurisdiction does not lie as to the GE Defendants in Pennsylvania, and therefore, not all defendants can be sued in this forum. Moreover, Florida—where Plaintiff and J.F. reside, where the injuries occurred, and where the Anesthesia System was sold and serviced— would be "the most natural State" for litigation against all three defendants under due process principles. *Ford Motor*, 592 U.S. at 370.

System remains in Florida along with potentially other relevant evidence, and Florida law likely applies to this dispute. Trial Court Opinion, 5/30/23, at 11. As the lower court explained, Crothall would face significant hardship in defending this suit in Pennsylvania with the vast majority of the witnesses and evidence being located in Florida. *Id.* We note that, notwithstanding Plaintiff's argument to the contrary, the trial court properly analyzed the inconvenience to Crothall in litigating in Pennsylvania rather than the potential burden on Plaintiff to try the case in her chosen forum. *See Vaughan v. Olympus America, Inc.*, 208 A.3d 66, 77 (Pa. Super. 2019) ("[A]ny difficulty a **plaintiff** faces in securing evidence necessary to prove a cause of action is not a valid reason to override the plaintiff's forum preference.") (emphasis in original).

Crothall submitted declarations from three of its current and former employees, demonstrating the significant hardship that these Florida-based employees would face if they had to travel for litigation in Philadelphia. *See* Crothall's Motion to Dismiss for Forum Non Conveniens, 9/2/22, Exhibits C-E. The declarations establish that Crothall's sole involvement with the Anesthesia System was to perform an electrical safety check to determine if it was properly grounded upon its installation eleven months prior to J.F.'s surgery and that Crothall had no role in the design, purchase, or installation of the subject equipment. *Id.*, Exhibit C ¶¶4-7, Exhibit D ¶¶4-7, Exhibit E ¶¶4-7. Further, the declarations showed that all of the Crothall employees who had

any involvement with the Anesthesia System were based in Florida. *Id.*, Exhibit C ¶8, Exhibit D ¶8.

Crothall thus provided evidence to support the trial court's conclusion that the key witnesses it would present at trial were based in Florida and would testify, consistent with the company's defense asserted in its answer, that Crothall had insufficient involvement with the Anesthesia System to be found liable for J.F.'s injuries. *See* Trial Court Opinion, 5/30/23, at 11; *see* New Matter, 7/25/22, ¶76; Crothall's Motion to Dismiss for Forum Non Conveniens, 9/2/22, at 2; *cf. James*, 310 A.3d at 320-21 (reversing grant of motion to dismiss based upon inconvenient forum where corporate defendant did not establish that its employees who would be inconvenienced by litigation in Philadelphia would be key witnesses in establishing the defendant's defense). We are unpersuaded by Plaintiff's claim that the absence of relevant testimony from the Florida witnesses must mean that Crothall's negligence can be proven through examination of the company's Pennsylvania employees, particularly where the substantive allegations related to Crothall in the complaint focus on its role in allowing the equipment to be used despite a defective plug rather than any particular actions originating at the company's headquarters and no Pennsylvania employees with relevant knowledge were identified during discovery. *See, e.g.,* Complaint, 9/8/21, ¶¶26-28; *cf. Vaughan*, 208 A.3d at 76-77 (finding that there was a "close connection" between litigation and forum where plaintiff identified 64 employees of corporate defendants located in Philadelphia area and "critical" documents would be found in defendants'

Pennsylvania offices); *Wright v. Aventis Pasteur, Inc.*, 905 A.2d 544, 549 (Pa. Super. 2006) (reversing grant of *forum non conveniens* dismissal where plaintiffs alleged "detailed relevant corporate actions" taken by multiple corporate defendants in Pennsylvania and identified 21 potential witnesses who live or work in Philadelphia area).

The trial court also did not abuse its discretion in finding that the public factors greatly favor dismissal where this case centers on medical treatment rendered in a Florida hospital that led to injury to a minor who continues to live with Plaintiff in Florida. *See* Trial Court Opinion, 5/30/23, at 12. As the trial court noted, this matter also involves issues of Florida law, which will also present a burden on the trial court. *Id.* Plaintiff's arguments focus on Pennsylvania's interest in regulating the behavior of a company domiciled within its borders, but we find no support for Plaintiff's theory that a corporate defendant's Pennsylvania headquarters is enough by itself to defeat a *forum non conveniens* motion. The fact of Crothall's local headquarters is of reduced importance here where the equipment at the heart of this case was not designed, manufactured, marketed, or sold from the Commonwealth. *Cf. McConnell*, 221 A.3d at 231-32 (finding that public factors did not weigh in favor of dismissal where defendant corporations engaged in sale, marketing, and post-market surveillance of subject product from Pennsylvania headquarters and these activities formed "the crux of many of [the plaintiff's] claims").

Accordingly, we find that Plaintiff has not demonstrated a basis for this Court to overturn the trial court's decision to grant Crothall's motion to dismiss on the basis of *forum non conveniens* or the court's decision to sustain the GE Defendants' preliminary objections for lack of personal jurisdiction. We therefore affirm the trial court's October 28, 2022 and January 13, 2023 orders and the dismissal of Plaintiff's complaint.

Orders affirmed.

Judge Stabile joins the opinion.

Judge McLaughlin notes dissent.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/9/2024