J-S05011-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ZEV GUTTMAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARINE CLUB ASSOCIATES, LLC | : | No. 1355 EDA 2024 |

Appeal from the Order Entered April 18, 2024
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  231101283

BEFORE:   BOWES, J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BOWES, J.:                          **FILED APRIL 11, 2025**

Zev Guttman ("Plaintiff") appeals from the order sustaining the preliminary objections filed by Marine Club Associates, LLC ("Defendant") and dismissing Plaintiff's second amended complaint with prejudice.  We reverse and remand for further proceedings.

We glean the following from the certified record.  Plaintiff initiated this matter by filing a complaint against Defendant asserting several violations of the Philadelphia Lead Paint Disclosure and Certification Law ("LPDCL").  Plaintiff alleged that he is a tenant of a property owned by Defendant pursuant to a written lease dated January 1, 2020, which the parties have renewed at the beginning of each year since then.[1]  As amended a second time, the

_____

[*] Former Justice specially assigned to the Superior Court.

[1] The lease was co-signed by an individual named Isaac Breuer, who was not named in this action and who purportedly does not reside on the premises.

complaint averred that Defendant failed to abide by the LPDCL by neglecting to procure a valid lead paint certification prepared by a lead inspector, provide the same to Plaintiff, or give a copy to Philadelphia's Department of Public Health.

Defendant filed preliminary objections to the second amended complaint on March 6, 2024. Therein, Defendant contended that Plaintiff's pleading failed to state a valid claim for violation of the LPDCL and that the case must be dismissed for several reasons: (1) the ordinance only applies to situations where children under six years of age reside on the rental property, which is not the case here; (2) renewal leases did not fall within the purview of the ordinance; (3) Plaintiff failed to provide notice to Defendant before filing suit, as required by law; and (4) the terms of the lease contained an express waiver and release of these claims by Plaintiff against Defendant. Defendant also asserted that Plaintiff lacked standing to sue for a violation of the LPDCL because he was no longer a tenant, evidenced by the fact that Defendant sent Plaintiff a notice of non-renewal for the lease requiring him to vacate by the end of 2023.

Following consideration of the preliminary objections and Plaintiff's written answer, the trial court entered an order sans opinion on April 17, 2024, sustaining the preliminary objections and dismissing the second amended complaint with prejudice. It specifically noted four bases for its decision: Plaintiff did not state a valid claim for violation of the LPDCL, he lacked

standing to pursue the claim, the claims were waived by the terms of the lease agreement, and he failed to join an indispensable party.

Plaintiff filed a timely appeal. The record does not reflect that the trial court ordered Plaintiff to file a statement of errors pursuant to Pa.R.A.P. 1925(b); however, Plaintiff appended to his brief a statement that appears to have been filed on May 10, 2024. The court entered a two-sentence opinion pursuant to Rule 1925(a) wherein it acknowledged committing a mistake in sustaining the preliminary objections and requested that this Court remand the matter without further explanation.

Plaintiff presents four issues for our review:

1. Did the trial court commit an error of law in determining that [Plaintiff] failed to state a valid claim under the Philadelphia LPDCL where the claims were based on the most recent amendments to the law, which expressly apply to renewal leases and don't require a [ten]-day written notice before filing suit?

2. Did the trial court commit an error of law in determining that [Plaintiff]'s claims under the Philadelphia LPDCL were barred by the exculpatory clause in the lease agreement, where the LPDCL was enacted to protect the public from the danger of lead paint poisoning and therefore as a matter of law the clause was void against public policy and unenforceable?

3. Did the trial court commit an error of law in determining that [Plaintiff] did not have standing to bring claims under the Philadelphia LPDCL, where, pursuant to Phila. Code § 6-809(4), which provides the "lessor shall be denied the right to recover possession of the premises or to collect rent during the period of noncompliance", he was legally in possession of the subject property when the complaint was filed and still had a landlord-tenant relationship with [Defendant]?

- 3 -

4.    Did the trial court commit an error of law in determining that [Plaintiff] had failed to join an indispensable party, where the co-signor on the original lease agreement was, by the terms of the lease, not a tenant and did not reside at the property and therefore could not bring a claim under the Philadelphia LPDCL and was not essential to the merits of [Plaintiff]'s LPDCL claims against [Defendant]?

Plaintiff's brief at 3-4 (cleaned up).

We begin with the applicable principles of law:

Our standard of review of an order of the trial court . . . sustaining preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.

Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

*Godlove v. Humes*, 303 A.3d 477, 480-81 (Pa.Super. 2023) (cleaned up).

The second amended complaint set forth a single claim of violation of the Philadelphia LPDCL ordinance. "An ordinance, like a statute, must be construed, if possible to give effect to all of its provisions." *Hand v. Fuller*, 294 A.3d 468, 473 (Pa.Super. 2023) (citation omitted). With respect to the LPDCL:

The ordinance was enacted in 1995 to assist the Department of Health in identifying, reducing, and combating lead poisoning in Philadelphia children. Recognizing that the most significant

- 4 -

remaining source of environmental lead is lead-based paint in housing built prior to 1978, the ordinance requires lessors and sellers of properties built before March 1978, in which a child age six or under will reside, to disclose to a seller or lessee the absence or presence of lead-based paint or lead-based paint hazards.

***Cooper v. SGYS St. Ives, LLC***, ___ A.3d ___, 2025 WL 853880 at *4 (Pa.Super. March 19, 2025) (quoting ***Hand***, 294 A.3d at 473) (cleaned up). However, the law has been amended several times since its enactment, most recently in 2020, and expanded in scope, such that it is no longer concerned solely with protecting the wellbeing of children. ***See***, ***e.g.***, ***id***. at 20 ("This ordinance seeks to keep people, especially children, safe from lead poisoning, and to ensure that property sellers/lessors with older buildings are prioritizing the safety of buyers/tenants.").

Plaintiff specifically alleged that Defendant violated the following section of the LPDCL:

> (3)  Rental Protections.
>
> > (a)  No rental license . . . shall be issued or renewed to a lessor with respect to any Targeted Housing, and no lessor shall enter into a lease agreement with a lessee to rent any Targeted Housing, or a unit in such Targeted Housing, unless (.1) he or she provides the lessee with a valid certification prepared by a certified lead inspector stating that the property is either lead free or lead safe; (.2) the lessee acknowledges receipt of the certification by signing a copy; [and] (.3) the lessor has provided to the Department of Public Health a copy of such certification. For purposes of this subsection (a), a lease agreement shall include a renewal of a lease agreement, including an automatic renewal, provided that, no certification shall be required upon renewal of a lease if a prior certification provided to the lessee remains valid, as provided for at [§] 6-802(15).

Phila. Code § 6-803(3). In turn, "Targeted Housing" is defined as "property built before March 1978 (even if renovated thereafter) that is currently used as housing, but excluding: dwelling units developed by or for an educational institution for the exclusive residential use and occupancy by that institution's students, where non-student family members are not permitted to reside." *Id*. at § 6-802(14). Finally, the LPDCL provides that for violations of the above subsection, a harmed party may obtain, among other things, reimbursement of rent paid during the period of noncompliance and attorneys' fees. *Id*. at § 6-809(3).

In his first issue on appeal, Plaintiff argues that the amended complaint set forth a cause of action for violation of the LPDCL, and therefore the court correctly recognized that it erred in dismissing the suit. *See* Plaintiff's brief at 12-18. He recounts that in the second amended complaint, he alleged that the leased premises satisfied the definition of "Targeted Housing" and that Defendant did not provide him with a certification indicating that the property was lead-free. *Id*. at 13-14. Plaintiff contends that when accepted as true, as required, this averment satisfies the fact pleading requirements. *Id*. at 17-18. He additionally maintains that, with respect to the arguments raised by Defendant in its preliminary objections, while some perhaps would have warranted consideration under prior versions of the LPDCL before it was amended in 2020, they are now no longer relevant. This includes the positions that the LPDCL does not apply to renewal leases and the consequence of not providing written notice to a landlord before filing a complaint. *Id*. at 15.

For its part, Defendant proffers two primary reasons in its brief why Plaintiff has failed to state a cause of action. It first argues that the residence in question was objectively safe, since Defendant obtained an appropriate certification and provided it to Plaintiff's counsel after the suit was filed. *See* Defendant's brief at 21-23. It next avers that allowing the case to proceed will "open the floodgates" to abusive litigation from tenants who are "gaming the system" because Plaintiff's suit is not in the spirit of the intended protection of the ordinance, which is children. *Id*. at 24. Defendant laments that Plaintiff never filed suit for violation of the ordinance in the years during which he resided in the apartment, and accuses him of filing suit now only because the 2020 amendment to the LPDCL broadened its scope. *Id*. at 28.

Upon review, we agree with both Plaintiff and the trial court that the court erred in sustaining Defendant's preliminary objections for failure to state a cause of action. As highlighted by Plaintiff, the second amended complaint asserted that he resides in a property that satisfies the definition of "Targeted Housing." Additionally, it alleged that Defendant failed to obtain a certificate, have Plaintiff acknowledge receipt of the certificate, or provide a copy of it to the appropriate local department. Therefore, that pleading set forth a cause of action sufficient to survive a demurrer. Defendant's contention that the property is safe may very well constitute an affirmative defense or consideration for the court or factfinder at a later proceeding, but does not

bear on the facial sufficiency of the complaint.[2] *See*, *e.g.*, Pa.R.Civ.P. 1030(a) (stating that affirmative defenses "shall be pleaded in a responsive pleading under the heading 'New Matter'").

Further, Defendant's policy arguments ask us to ignore the plain language of the ordinance in order to pursue its spirit. That we will not do. *See Crown Castle NG East LLC v. Pennsylvania Public Utility Commission*, 234 A.3d 665, 688 (Pa. 2020) ("When statutory language is clear and unambiguous, courts must give effect to the words of the statute and must not disregard the text to implement its objective." (citation omitted)). This is especially true when the question before us is simply whether the complaint pled facts sufficient to endure a demurrer.

In Plaintiff's next issue on appeal, he contends that the second amended complaint should not have been dismissed based on Defendant's allegation that there was a release provision in the written lease. *See* Plaintiff's brief at 18-20. He specifically argues that Pennsylvania courts have disregarded exculpatory clauses as "void against public policy where it immunizes a party from the consequences of violating a statute or regulation intended to preserve health or safety." *Id*. at 19 (citing *Degliomini v. ESM Productions, Inc.*, 253 A.3d 226, 238 (Pa. 2021)).

_____

[2] Some of the issues raised by Defendant herein are similar in nature to those considered by this Court recently in *Cooper*. That case, however, involved an appeal arising from a different procedural posture, namely the grant of the defendant's motion for judgment on the pleadings. Here, the court dismissed the complaint prior to the filing of any answer or new matter from Defendant. *Cooper* is therefore not dispositive.

In response, Defendant focuses on paragraph twenty-seven of the lease, noting that it requires Plaintiff's prompt written notice of any deficiencies as to the property, or else it operates as a release of any such claims. *See* Defendant's brief at 30. Defendant further asserts that that the limitation of liability provision is "enforceable and not against public policy" because the provision in question is "clear and unambiguous." *Id*. at 31.

We again concur with Plaintiff and the trial court that dismissal of the case on this point was improper based upon this disputed provision within the lease. Despite the parties debating at length, we need not decide now whether the release provision is void against public policy. Assuming, *arguendo*, that it was not, dismissing the complaint at the preliminary objection stage was inappropriate as Defendant's point was an affirmative defense to the second amended complaint that does not speak to legal sufficiency. *See* Pa.R.Civ.P. 1030(a) (specifically identifying release as an affirmative defense, which must be raised in new matter). The applicability of the exculpatory clause simply was not yet a pertinent question for the court to consider.

Plaintiff avers in his third claim that the court erroneously sustained Defendant's preliminary objections based upon his purported lack of standing. *See* Plaintiff's brief at 21-23. He first notes that although the trial court ruled in Defendant's favor on this basis, this position was not, in fact, established within the preliminary objections. *Id*. at 21. Plaintiff further maintains that to the extent this claim was granted because there was no child under the age of six living on the property, that is irrelevant under the current version of the

LPDCL. *Id*. On the other hand, if it was granted due to Defendant's allegations that the lease agreement was terminated as of the end of calendar year 2023, destroying a landlord/tenant relationship, Plaintiff highlights that the LPDCL prohibits a landlord from ending a lease during a period of noncompliance. *Id*. at 21-22.

Defendant does not address the position that the LPDCL, as currently amended, does not require a young child to live on the premises for it to apply. In that regard, we agree with Plaintiff that this argument is unavailing and would not deprive him of standing. Concerning the notion that Plaintiff was no longer a tenant or otherwise in a landlord/tenant relationship with Defendant at the time of filing suit, we again find that the court could not rely on this allegation to dismiss the complaint. While Pa.R.Civ.P. 1028 does permit a party to file preliminary objections asserting lack of capacity or standing to sue, that generally raises a factual question, as it did here, which the trial court was required to resolve through evidence by deposition or otherwise. *See* Pa.R.Civ.P. 1028(c)(2); *C.G. v. G.H.*, 172 A.3d 43, 54 (Pa.Super. 2017) ("It is proper for a court to hear testimony and admit other evidence into the record in order to determine a preliminary objection as to standing." (citation omitted)). The record reveals that the court did not conduct a hearing or otherwise hear evidence in support of Defendant's preliminary objections, and therefore it was not in a position to determine Plaintiff's standing or lack thereof.

- 10 -

In his final claim, Plaintiff asserts that the trial court erred in sustaining Defendant's preliminary objections on the ground that Plaintiff failed to name an indispensable party. **See** Plaintiff's brief at 23-25. Notably, Defendant did not discuss this point of error in its brief to this Court. Additionally, our review of the preliminary objections and supporting brief does not demonstrate that this claim was developed beyond a bald assertion before the court. Instead, the preliminary objections merely identified that there was another individual who co-signed the lease in question but never resided in the rented property. There was no averment that this individual was in a tenant relationship with Defendant or that he otherwise had standing to pursue a claim of violation of the LPDCL. Therefore, there does not appear to be any record support for the court's order on this particular issue. **See**, **e.g.**, **Kennedy v. Crothall Healthcare, Inc.**, 321 A.3d 1065, 1072 (Pa.Super. 2024) ("Requiring issues to be properly raised first in the trial court ensures that trial judges have the opportunity to consider a potential appellate issue and correct any error at the first available opportunity.").

Beyond the four claims presented by Plaintiff, Defendant advances two additional arguments in support of affirmance in its brief: the trial court correctly dismissed the complaint since Plaintiff sued the wrong defending entity and because Philadelphia's municipal court, not the court of common pleas, had exclusive jurisdiction over this matter. **See** Defendant's brief at 18-19, 29-30. These stances were not raised in the preliminary objections filed in the trial court. It is clear from the record that the court did not have

the opportunity to consider these arguments, and it did not rely upon them as a reason for dismissal. Moreover, there is no record developed as to these contentions. We therefore may not consider them now. **See Kennedy**, 321 A.3d at 1072.

Based on the above, we agree with the trial court that it erred in sustaining Defendant's preliminary objections and ordering that the second amended complaint be dismissed with prejudice. Therefore, we reverse and remand for further proceedings.

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/11/2025